**LOCAL UNION 1219, UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, Plaintiff,**

v.

**UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA, Defendant.**

**Civ. No. 10–199.**

United States District Court,
D. Maine, S. D.

June 15, 1970.

G. Curtis Webber, Auburn, Me., for plaintiff.

Errol K. Paine, William S. Cohen, James G. Lynch, Bangor, Me., for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an action under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1964), brought by a local union against its parent international, seeking injunctive relief and damages for the failure of defendant to fulfill obligations claimed to have been assumed by it in plaintiff's charter. The present lawsuit is the culmination of a long-standing jurisdictional dispute concerning the representation of millwrights in the State of Maine. Plaintiff contends that by its charter defendant conferred upon it exclusive state-wide jurisdiction over millwrights and undertook to support plaintiff in asserting and maintaining this jurisdiction, but that defendant has failed to support plaintiff's jurisdictional claims and has acquiesced in the continued representation of millwrights in this state by defendant's affiliated carpenter locals.

Plaintiff first brought suit in this Court on February 26, 1969. On May 15,

---

1969, the Court dismissed the complaint in that action because of plaintiff's failure to allege or otherwise to show either exhaustion of its intra-union remedies or excuse for its failure to do so. *See* Local 1219 Carpenters v. International Brotherhood of Carpenters, Civil No. 10–172 (D.Me. May 15, 1969). The present action was filed on June 2, 1969. On July 22, 1969 the Court denied defendant's motion to dismiss the complaint, holding, insofar as here material,[1] that plaintiff was entitled to the opportunity to establish by proof at trial a legally sufficient excuse for its admitted failure to exhaust its intra-union remedies. Plaintiff was provided that opportunity at a three-day trial on February 2–4, 1970. Having now considered the evidence submitted by the parties and the written and oral arguments of counsel, the Court has concluded that the action must be dismissed because the record clearly discloses that plaintiff has not exhausted the internal appeal procedures prescribed by defendant's Constitution and Laws, and has not shown any legally sufficient excuse for its failure to do so.

## I

There is no substantial dispute over the essential factual background of the present litigation. Defendant is a large international union claiming jurisdiction over carpenters and the various subdivisions of the carpenters' trade, including millwrights.[2] For many years prior to 1966, jurisdiction over both carpenters and millwrights in the State of Maine was vested in five local carpenter unions chartered by defendant, each having geographical jurisdiction within a defined area of the state. These were Local 621 (Bangor), Local 348 (Waterville), Local 914 (Augusta), Local 407 (Lewiston), and Local 517 (Portland).[3] Historically, these five local carpenter unions have been parties to collective bargaining agreements, which are renegotiated every two years, with the so-called "local," or intrastate, contractors in this state. By the terms of these agreements the local carpenter unions have been recognized as the appropriate bargaining representatives for millwrights in their respective geographical areas. Additionally, defendant has entered into an "international agreement" with the so-called "international," or interstate, contractors doing business in Maine, by the terms of which the international contractors recognize defendant's jurisdictional claims and agree to be bound by the terms of the collective bargaining contract in effect between the local contractors and the recognized bargaining agency of the locality in which an international contractor is working.

On June 15, 1966 defendant chartered plaintiff, Local 1219, as a new local with jurisdiction to represent all millwrights in the State of Maine.[4] It is uncontroverted that the carpenter locals vehemently opposed the formation of a mill-

---

1. The Court also reaffirmed its prior ruling that this Court has subject matter jurisdiction under Section 301(a). Parks v. Int'l. Bhd. of Elec. Workers, 314 F.2d 886, 914–917 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); Local 33 Intern. Hod Carriers v. Mason Tenders Dist. Council of Greater New York, 291 F.2d 496, 501–502 (2d Cir. 1961); Local Union No. 28 Elec. Workers v. Int'l. Bhd. of Elec. Workers, 197 F.Supp. 99, 105–107 (D. Md.1961).

2. Generally speaking, carpenters work with wood while millwrights erect and dismantle machinery. *See* N.L.R.B. v. Consolidated Constructors and Builders, Inc., 406 F.2d 1081, 1082 n. 2 (1st Cir. 1969).

3. In addition, two New Hampshire locals had jurisdiction over carpenters and millwrights in small areas of the state adjacent to the Maine-New Hampshire state line, and there were five small plant maintenance locals representing millwrights employed by paper mills within the state. None of these unions are involved in the present jurisdictional dispute.

4. While the record is clear that plaintiff's geographical jurisdiction was to be statewide, nowhere does it appear that, as plaintiff contends, its jurisdiction was to be exclusive of the jurisdiction over millwrights which had been traditionally exercised by the carpenter locals.

wrights' union.[5] During the summer of 1966, defendant's General President instructed the carpenter locals not to bargain for millwrights in the new contracts which were then being negotiated with the local contractors. Only Local 621 (Bangor) heeded this directive, but as the result of an unfair labor practice charge filed against it by a local contractor, it acceded to a compromise settlement, one condition of which was that it would continue to bargain for millwrights. In the meantime, the other four carpenter locals simply ignored the General President's order.

From its inception plaintiff has been confronted by the frank hostility of the carpenter locals, and its road has been a rocky one. It has long since abandoned its initial effort to furnish millwrights to the local contractors,[6] and its attempts to supply millwrights to the international contractors have been consistently frustrated by the refusal of defendant's General President to inform the international contractors that they could hire plaintiff's members on their jobs in Maine.[7] In the absence of such assurance, the international contractors, with only two exceptions, have been unwilling to recognize plaintiff as the bargaining agent for their millwrights.[8] As a result, plaintiff's membership has dropped from a peak of 110 members in the summer of 1966 to approximately 50 members at the present time.

The record is clear that throughout the period since the granting of its charter plaintiff has sought the assistance of defendant's General President, general counsel and regional representatives in establishing its state-wide jurisdiction over all millwright work. Plaintiff's business agent and its counsel have repeatedly written, telegraphed and met with these officials and have requested the General President to instruct the carpenter locals that they are not authorized to bargain for millwrights, and to furnish the international contractors with written authorization to obtain millwrights from plaintiff. None of these efforts have met with success. Plaintiff has not, however, instituted any appeal either to defendant's General Executive Board or to its General Convention from the failure of the General President to accede to plaintiff's de-

5. Indeed, Local 407 (Lewiston) appealed to defendant's General Convention the decision of its General Executive Board to approve plaintiff's charter. This appeal was rejected at the September 1966 meeting of the Convention.

6. Plaintiff does not here contend that defendant breached its "contract" with plaintiff by failing to force the local contractors to bargain with it. Plaintiff concedes that defendant could not now interfere with the existing collective bargaining agreements between the carpenter locals and the local contractors. In the present litigation plaintiff seeks only to compel defendant to support plaintiff in its battle to win contracts with the international contractors.

7. Defendant's position throughout has been that under the terms of the international agreement, the international contractors were obligated to obtain their millwrights from the recognized bargaining agency of the locality in which they were working, which in each instance was the local carpenter union, and that defendant could not legally require them to recognize plaintiff's claims, even if it wanted to do so.

8. Plaintiff was successful in signing a contract with Northeast Constructors, Inc. covering millwrights for construction work at Bucksport and Woodland in the fall of 1966 and the spring of 1967. Plaintiff also succeeded in obtaining state-wide agreements with G. H. Harnum, Inc. in 1967 and 1968. The record discloses, however, that plaintiff has been unable to obtain a state-wide contract with Northeast Constructors, Inc. and that since the summer of 1967 plaintiff has tried and failed to place its members on a Walsh Construction Company job at Jay; a Thomas Brennan Construction Company job at Sanford; a Leonard Construction Company job at Orrington; a Northeast Constructors, Inc. job at Millinocket; a Stone and Webster Construction Company job at Wiscasset; a George Ball Construction Company job at Bucksport; and an Aycock, Inc. job at Cutler. In each instance, either the contractor or the plaintiff requested written authorization from defendant, which was not forthcoming.

mands.[9] Asserting that it would be futile for it to do so, plaintiff now turns to the courts for relief.

## II

Section 57(G) and (H) of defendant's Constitution and Laws, as amended January 1, 1968, provides:

(G) Any member, or any Local Union, District, State or Provincial Council having any grievance may appeal to the General President within thirty days from the date the grievance occurred. All protests directed to the conduct of nominations or elections in any subordinate body may also be appealed to the General President within thirty (30) days from the date of the election. All grievances and election protests shall be in writing and shall contain a brief statement of the grounds relied upon. Decisions of the General President on grievances may be appealed to the General Executive Board subject to a further appeal to the General Convention. Decisions of the General President in cases of protests directed to the conduct of nominations or elections in subordinate bodies may be appealed to the General Executive Board, in which case the decision of the General Executive Board shall be final.

(H) All appeals from decisions of the General President to the General Executive Board must be forwarded to the General Secretary within thirty (30) days from the date of receipt of the General President's decision. Also any appeal from a decision of the General Executive Board to the General Convention must be forwarded to the General Secretary within thirty (30) days from date of receipt of decision of the General Executive Board.[10]

Plaintiff freely admits that it has not complied with these procedures. Plaintiff also concedes that, as a general proposition, parties are not entitled to a judicial resolution of intra-union disputes until they have exhausted available internal appeal procedures. Local 33, Intern. Hod Carriers v. Mason Tenders District Council of Greater New York, *supra n. 1*, 291 F.2d at 498–500; Local Union No. 28 Electrical Workers v. International Brotherhood of Electrical Workers, *supra n. 1*, 197 F. Supp. at 107–108. Plaintiff contends, however, that the present case falls within the recognized exception to the general rule where an effort to pursue intra-union remedies would be futile, or result in irreparable injury because of probable delay. Parks v. International Brotherhood of Electrical Workers, *supra n. 1*, 314 F.2d at 924–925; Farowitz v. Associated Musicians of Greater New York, 330 F.2d 999, 1002–1003 (2d Cir. 1964). *Cf.* Detroy v. American Guild of Variety Artists,

9. In June 1968 a plenary session of the General Executive Board was held at the request of the carpenter locals in an unsuccessful attempt to straighten out the millwright situation in Maine. Plaintiff argues that the presence of its business agent at this meeting excuses its compliance with the appeal requirements of defendant's Constitution and By-laws. It is clear, however, that the hearing before the General Executive Board was simply for the purpose of airing grievances and not a part of any appeal procedure. No formal action was requested by plaintiff at this meeting, and no action was taken by the board.

10. Prior to the 1968 amendment, Section 57(G) and (H) read as follows:

(G) All appeals from the decision of the General President to the General Executive Board must be forwarded to the General Secretary within thirty days from the date of receipt of the General President's decision. Also any appeal from the decision of the General Executive Board to the General Convention must be made within thirty days from date of receipt of decision of the General Executive Board.

(H) A member who has a grievance or who has had an injustice done in any way, or any Local Union, District, State or Provincial Council having any grievance, may appeal to the General President for redress within 30 days from date the grievance occurred, subject to a further appeal to the General Executive Board, and a final appeal to the General Convention.

286 F.2d 75, 77–78 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed. 2d 388 (1961).

In the instant case, the record does not support plaintiff's claim that the appeal to the General Executive Board provided by defendant's Constitution and Laws would be futile or otherwise unreasonable because of delay. Plaintiff's claim of futility is not substantiated by the charge that the General President and other of defendant's officers are "hostile" to plaintiff's jurisdictional claims. *See* Durandetti v. Chrysler Corp., 195 F.Supp. 653, 656 (E.D.Mich. 1961). No facts have been shown which would justify the Court in assuming that the General Executive Board would not give full and fair consideration to plaintiff's position. *See* Fish v. Huddell, 60 App.D.C. 263, 51 F.2d 319, 320 (D.C.Ct. App.1931). During the three years since plaintiff was first made aware of the position of the General President, it has taken no steps to appeal his decision to the General Executive Board. No reason appears as to why, if time was of the essence, an appeal to the General Executive Board, which is required by defendant's Constitution to meet at least quarterly, could not have been processed long prior to the commencement of the present action. Nor does the evidence warrant the conclusion that a further appeal to the General Convention would be futile. While plaintiff argues that there would be a serious question of delay involved in an appeal to the Convention, which meets only quadrennially, *see* Parks v. International Brotherhood of Electrical Workers, 203 F.Supp. 288, 294–295 (D.Md.1962), rev'd on other grounds, 314 F.2d 886 (4th Cir.), cert. denied,

372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), the question of an appeal to the Convention is moot inasmuch as plaintiff has not yet appealed to the General Executive Board. Furthermore, at the present time, it would seem that plaintiff could process an appeal in time for consideration at the next meeting of the Convention, which is to be held in September of this year.

As the court observed in Local Union No. 28 Electrical Workers v. International Brotherhood of Electrical Workers, *supra:*

> The rule that courts will not intervene in intra-union disputes until appeals within the union have been exhausted is based upon sound policies: that union appellate tribunals may take corrective action, reducing the burden on the courts; that the courts may have the benefit of the expert judgment of those tribunals; and that unions should be given full autonomy and responsibility. 197 F.Supp. at 107.[11]

In the present case, the Court is being asked to resolve an intra-union dispute involving the conflicting jurisdictional claims of local unions. Absent extraordinary circumstances not present here, the courts should not intervene in such a dispute until either internal appeals have been exhausted or the futility of pursuing the remedies available within the union has been demonstrated. Plaintiff has made no such showing in this case.

No sufficient grounds having been shown for plaintiff's failure to exhaust its intra-union remedies, the action must be dismissed.

It is so ordered.

---

11. *See also* Cox, The Role of Law in Preserving Union Democracy, 72 Harv.L.Rev. 609, 615 (1959):

> Outside bodies, whether courts, administrative agencies, or private independent appeal boards, should not interfere in the internal affairs of a labor organization until the organization has had a reasonable opportunity to correct any mistakes committed by subordinate bodies. It is in this way that independent self-government is maintained.