Al GARDNER, Vice-President Tool and Die Unit Local 600 UAW, et al., Plaintiffs,

v.

Leonard WOODCOCK, President, the International Executive Board and International Union United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), a voluntary, unincorporated association, Defendants.

Civ. A. No. 4–71585.

United States District Court, E. D. Michigan, S. D.

Oct. 25, 1974.

Ronald J. Reosti, for plaintiffs; Harry M. Philo, Detroit, Mich., co-counsel for plaintiffs.

John A. Fillion, Jordan Rossen, Detroit, Mich., for defendants.

OPINION

RALPH M. FREEMAN, District Judge.

This suit was brought by members of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) to enforce a section of the UAW Constitution and to enjoin the defendants from implementing a national contract negotiated with Ford Motor Company. The defendants have filed a motion for summary judgment, alleging that the interpretation of the section sought to be enforced has been resolved adversely to plaintiffs through intra-union procedures to which the plaintiffs are bound, and that they are thus foreclosed from maintaining the present suit. This case is presently before the court on that motion for summary judgment.

Plaintiffs are members of the UAW belonging to Locals 600 and 228. They bring the present suit on their own behalf and on behalf of UAW members who have allegedly authorized them to bring suit. They further claim to represent the class of UAW members comprised of skilled tradesmen employed by Ford Motor Company who are desirous of exercising their alleged right to ratify any contract negotiated by defendants and Ford as a condition precedent to the signing of the contract. Defendants are the UAW, the International Executive Board (IEB) thereof, and Leonard Woodcock, President of the UAW.

In early November, 1973, a proposed contract agreement between the UAW

and Ford was submitted to the membership of the UAW's Ford locals for ratification. It is undisputed that the production and non-skilled trades workers approved the agreement by a vote of 112,154 to 38,684 while the skilled trades workers voted to reject the contract by a vote of 20,089 to 5,943. As the total vote for all members voting was 118,097 to 58,773 in favor of approving the contract, on November 14, 1973, the IEB declared the new National Agreement ratified. The Board so advised Ford and notified Ford that the agreement would go into effect on November 19, 1973.

The plaintiffs contend that the agreement has not been properly ratified because of the vote of the skilled workers to reject the contract, notwithstanding the fact that the majority of the total members voting voted to accept the contract. They contend that under Article 19, Section 3 of the UAW Constitution, the agreement would not be ratified unless approved by a majority of the skilled trades workers. Plaintiffs rely on the following provision of Article 19, Section 3:

> . . . Upon application to and approval of the International Executive Board, a ratification procedure may be adopted wherein apprenticeable skilled trades and related workers, production workers, office workers, engineers, and technicians would vote separately on contractual matters common to all and, in the same vote, on those matters which relate exclusively to their group.

Apparently the skilled workers obtained the approval of the IEB to vote separately on the contract in issue in this lawsuit. Plaintiffs interpret the above quoted provision as giving a veto power to any group which, voting separately, votes to reject the contract.

The present suit was filed on May 3, 1974. On November 26, 1973, plaintiffs filed a case in Wayne County Circuit Court against the same defendants, which case was removed by the defendants to this court on December 17, 1973. (Gardner et al v. Woodcock et al, Civil Number 4–70832). That case alleged the same cause of action as is contained in the present suit, but was ultimately dismissed without prejudice, by stipulation, on February 20, 1974.

During the course of case # 4–70832, the plaintiffs asked this court to issue a preliminary injunction prohibiting the defendants from conducting any vote on any section of the national agreement with Ford, other than a ratification vote on the entire contract. That request, which was denied by this court, arose from the following facts:[1] At its meeting on November 14, 1973, the IEB concluded that the substantial rejection of the contract by the skilled trades workers had been caused by dissatisfaction with provisions on voluntary overtime as outlined in a letter of understanding dated October 26, 1973. On November 27, 1973, the UAW's Ford Skilled Trades Sub-Council held a meeting. This body consists of elected delegates from all the skilled trades units of the Ford locals. At this meeting it was concluded that skilled trades dissatisfaction should be taken care of by working out, with Ford, a series of optional ways for handling certain aspects of voluntary overtime affecting the skilled trades, with each unit of skilled trades workers selecting which option it wanted. Shortly thereafter the UAW and Ford worked out such a set of options and on November 29, 1973 the skilled units began voting to determine which option each wanted. It was these referenda which the plaintiffs sought to enjoin. The court does not know the result of these votes. But the pertinent fact with regard to the motion for summary judgment is that the defendants construed Article 19, Section 3 as giving them the flexibility of determining how to resolve a situation such as the one involved here. Rather than deciding that the

---

contract had been rejected, which apparently is an *option* in the eyes of the defendants, it was decided to try to satisfy the skilled trade workers while still ratifying the contract as a whole.

While case # 4–70832 was pending, the issue of the propriety of the defendants' actions in ratifying the contract was presented to the Public Review Board (PRB). Both parties had agreed to the submission of the issue to the PRB. (See transcript of the January 14, 1974 hearing in case # 4–70832, p. 8). The plaintiffs had sought to enjoin the local votes in the belief that they would interfere with the jurisdiction of the PRB and seriously impair the plaintiffs' internal union remedy. The court did not agree with this contention and denied the motion for a preliminary injunction.

The parties stipulated to the dismissal of # 4–70832 without prejudice pending the outcome of the PRB decision. (See ¶ 1 of the Complaint.) On April 10, 1974, the PRB rendered its decision after receiving briefs and oral argument. (A copy of the opinion is attached to the defendants' motion as Exhibit 2.) The majority of the PRB construed the disputed section of the Constitution adversely to plaintiffs' position and held that the National Agreement was properly ratified. Two members dissented from the majority interpretation of the Constitution and thought that the contract should have been resubmitted to the membership for approval. However, these members concurred in the decision not to upset the ratification of the contract because they felt that the IEB error in declaring the contract ratified was harmless error:

. . . Article 19, Section 3, which empowers the IEB to grant rights of separate ratification, does not provide that once separate ratification procedure is authorized, authorization may never be withdrawn. Apparently, it may be. And apparently, the IEB could have withdrawn the right in this instance and required a vote on the entire contract by all employees. Had it done so we would be prepared to take judicial notice of the fact that the contract would have been ratified. That this is so is plain from the totals recorded on the first vote . . . The failure of the IEB to have withdrawn separate ratification rights before declaring the contract ratified was error, but in light of the results, it was harmless error.

Another reason for not upsetting the contract mentioned by the dissenters was that the contract had already been implemented and to require the Union to hold a second vote would be to require a meaningless act.

As noted earlier in this opinion, the plaintiffs filed this suit on May 3, 1974. The 24th Constitutional Convention of the UAW was held in Los Angeles between June 2 and June 7, 1974. The delegates to that convention adopted a statement which interprets Article 19, Section 3. (The Statement is attached to the defendants' motion for summary judgment as Exhibit 3.) That interpretation rejected the theory of a skilled trades veto and accepted the theory of flexibility advanced by defendants in the case at bar. The Statement made specific reference to the situation involved in this lawsuit.

The defendants contend that the plaintiffs are asking this court to reinterpret Article 19, Section 3, but that the plaintiffs cannot make this request as the UAW Constitutional Convention has decided this issue adversely to the plaintiffs and that that body has the highest possible competence to interpret the UAW Constitution. Article 7 of the UAW Constitution is entitled "Powers of Administration," and Section 1 of that article provides in pertinent part as follows:

Section 1. The International Union shall be governed by its membership in the following manner:

(a) The highest tribunal shall be the International Convention composed of delegates democratically

elected by the membership of Local Unions.

(b) Between conventions the highest authority shall be the International Executive Board.

It is clear from the Statement adopted by the 24th Constitutional Convention that the interpretation advanced by the plaintiffs in this lawsuit has been rejected by that body.

Defendants further argue that in addition to the interpretation adopted by the Constitutional Convention, the PRB has decided the issue adversely to the plaintiffs' position and that plaintiffs are bound thereby. Both parties to this lawsuit agreed to the PRB's jurisdiction when they submitted the issue to that body, although it is not clear to the court, absent such agreement, whether or not the PRB would have had jurisdiction. See Article 32 of the UAW Constitution. Defendants contend that the ruling of the PRB is final and binding as long as it is not unreasonable.

The plaintiffs contend that neither the ruling of the PRB nor the Statement of the Constitutional Convention bars this lawsuit since the issue of the case is the interpretation of a contract between the members of the union; the contract being the Constitution.

They argue that the PRB ruling does not bar the suit since the PRB had no power to expand the authority of the IEB or to, thereby, take away rights granted to the membership by the constitution. The plaintiffs have stated, through counsel, that they have no quarrel with the PRB procedures and agree that the decision of the PRB deserves some weight. However, they argue that the PRB ruling was unfair or unreasonable.

Plaintiffs further contend that the Statement of the Constitutional Convention does not bar this suit since the Statement takes away rights that the constitution granted the membership and therefore is an "amendment" of the constitution, not an interpretation.

They argue that the Convention could not take away rights "after the fact."

Thus, plaintiffs contend that the constitutional dispute is to be settled by state contract law and that regardless of the PRB and Constitutional Convention action, the court has the right to interpret the constitution.

Defendants' response to this argument is that no right was taken away since the plaintiffs were *never granted* the right which they now allege, and that this is what the PRB and Constitutional Convention decided. They further argue that courts knew that they were talking about a contract when they have held that it is the union tribunal that has the right to interpret the union constitution.

The plaintiffs' argument seems to present a strange situation, for in order to determine if the plaintiffs' theory of this case is correct, it seems necessary to interpret the union constitution so as to decide whether or not the skilled tradesmen were ever given a veto power over a proposed contract. But it is this precise question which, the defendants contend, has been foreclosed by the PRB and Constitutional Convention actions.

The defendants cite Vestal v. Hoffa, 451 F.2d 706 (6th Cir. 1971), in support of their contention that the court should not interfere with the holding of the PRB (or the interpretation of the Constitutional Convention). In the *Vestal* case, the Sixth Circuit was confronted with a question of interpretation of the constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The Constitution gave the General President the power and authority of appointing trustees for local unions in certain circumstances. The General President had delegated this authority to the General Vice President who subsequently imposed a trusteeship on the local of which the plaintiffs were officers. Plaintiffs contended that the president's authority to impose trusteeships was nondelegable. The union constitution provided that

The General Vice President shall assume such duties and perform such functions as may be delegated to him by the General President. He shall be permitted to maintain such other offices, positions and functions as the General President shall approve.

The General Executive Board approved the delegation of authority involved in the case.

The plaintiffs brought suit to enjoin the trusteeship imposed by the General Vice President and the International Union brought suit to *enforce* the trusteeship. The district court determined that the International Constitution did not authorize the General Vice President to impose any trusteeship. The Sixth Circuit reversed, finding that the International Constitution was binding on union members and that the union Constitution gave the General Executive Board the power to interpret the constitution:

The General Executive Board shall have the authority to interpret and apply the Constitution and laws of the International Union and to decide all questions of law thereunder subject to appeal to the next Convention. (from the Teamster Constitution)

The Board had found that the power of delegation was conferred by the Constitution and representatives of the Teamster Joint Councils had approved the action of the Board. The court stated that "(c)ourts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." As the interpretation of the constitution by the General Executive Board was fair and reasonable, the Sixth Circuit refused to interfere.

The UAW Constitution gives the Constitutional Convention the right to interpret the constitution. The parties do not appear to be in dispute as to this fact. Between conventions, the IEB has this power. This is roughly analogous to the provision in the Teamster Consti-

tution quoted in the *Vestal* case. The Teamster analogue to the UAW International Executive Board interpreted the constitution and the Sixth Circuit refused to interfere with this interpretation. The *Vestal* court did not indicate how it would have interpreted the constitution, but merely found that the interpretation of the General Executive Board was not unfair or unreasonable. It is also worthy of note that in *Vestal* it appears that the highest union tribunal—the Convention, had not rendered an interpretation.

In the case at bar, not only has the IEB interpreted the constitutional provision, but so too has the Constitutional Convention. Moreover, the PRB, whose decisions are to be final and binding on the members, has interpreted the constitution in a proceeding collateral to that of the IEB and Constitutional Convention. (See Article 32, Section 3 of the UAW Constitution.)

Under the *Vestal* case, it would appear that this court must first look at the interpretations rendered by the union tribunals and decide whether they are unfair or unreasonable. If they are not unfair or unreasonable, the court could go no further. If they were unfair or unreasonable, apparently the court could then interpret the constitution.

The case of Gurton v. Arons, 339 F.2d 371 (2nd Cir. 1964) is not directly on point. However, although the case is concerned with the Labor-Management Reporting and Disclosure Act (LMRDA), it is worthy of note because of some general statements made by the court. In *Gurton* there was a dispute concerning the manner in which union members would vote. The union involved was Local No. 802, American Federation of Musicians.

In February, 1964, a mail vote was taken concerning the future method of voting for local officers. By a vote of 12,654 to 2,206 the members voted that future elections would be by secret mail ballot. Two members, Rothstein and Gurton, then proposed amendments to the union by-laws for consideration at a

membership meeting. The effect of the Rothstein resolution would be to return the method of election to voting in person. The effect of the Gurton resolution would be to require any member, who wished to vote by mail, to register in person at the union office during business hours during the month of September. Since the vast majority of the members were not full time musicians, and held other jobs, the ultimate effect of the resolution would be to disenfranchise these members.

The Local 802 Executive Board refused to put these resolutions on the agenda for the next membership meeting. Rothstein and Gurton brought suit to compel the placing of the resolution on the agenda and were successful. At the next meeting, attended by 1500 members, the majority adopted the resolutions.

The union officers appealed the action to the International Executive Board of the Federation. That body held that the adoption of the resolution was unlawful as their effect was disenfranchisement of some members.

Suits were then instituted to order the local officers to act in accordance with the resolutions and to declare the action of the International Executive Board to be invalid. Jurisdiction was based on §§ 101 and 501 of the LMRDA. The Second Circuit held that the complaints did not set forth violations of those sections. The court went on to state as follows:

The provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions. Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act. The conviction of some judges that they are better able to administer a union's affairs than the elected officials is wholly without foundation.

Most unions are honestly and efficiently administered and are much more likely to continue to be so if they are free from officious intermeddling by the courts. General supervision of unions by the courts would not contribute to the betterment of unions or their members or to the cause of labor-management relations.

In the present case, the controversy was handled within the union without any irregularity but with due regard for the procedures provided by the by-laws. The action taken by a meeting of members of the local was appealed to the International Executive Board, which exercises the power of the international organization between conventions. . . . We can find nothing in this procedure to which any exception can be taken. The provisions of the by-laws under which the International Board acted do not appear to us to be arbitrary or unreasonable and they are binding upon the plaintiffs as members of the union.

. . .

The basic issue, whether the union is to be run by its "working members" or by the members who are not employed full-time as musicians and who constitute a great majority of the membership is surely an issue for the union to decide for itself and not an issue on which the power of the courts should be enlisted on one side or the other. So long as the union in reaching its decision violates no provision of law, we judges should resolutely keep our hands off. (339 F.2d at 375)

The *Vestal* and *Gurton* cases clearly support the defendants' contention that they should be granted summary judgment. The plaintiffs do not seem to contest the law as cited by the defendants. Rather, they contest the defendants' theory of the issues involved in this motion. They contend that the question is one of authority:

Normally, disputes concerning the interpretation of the Constitution of such an organization are left to be re-

solved in the manner set forth in the Constitution.

However, it is a well accepted principle of law that an official (an agent) of an organization cannot expand the limits of his or her authority.

In such instances, Courts have intervened to overturn actions taken by officials when such actions are outside their delegated authority.

(Memorandum in Support of Plaintiffs' Complaint for Injunctive Relief, p. 2)

Plaintiffs contest the authority of the defendants to act as they did in declaring the contract ratified. They also seem to contend that the PRB and Constitutional Convention exceeded their authority by ruling as they did. Plaintiffs argue that the dispute involved in this suit should be settled by the State law of contract and/or voluntary association. They have cited several cases in support of their position.

In Scofield v. NLRB, 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969), union members were challenging disciplinary action taken against them by their union for violating a union rule. After the members refused to pay the fines, the union instituted suit in state court to collect them. The members then filed charges with the NLRB contending that the union's enforcement of the rule through fines was an unfair labor practice; a violation of § 8(b)(1)(A) of the NLRA. The NLRB found no unfair labor practice and the Seventh Circuit affirmed. The Supreme Court also affirmed.

In discussing whether the imposition of the fines violated the NLRA, the Court distinguished between internal and external enforcement and found that the internal enforcement complained of did not violate the Act. The merits of this case are not relevant to the case at bar, but the plaintiffs have cited this case for a statement made in a footnote. In discussing the facts, the Court stated that the union had brought suit in state court to collect the fine as a matter of local contract law. The footnote to this statement reads as follows:

[3]Unless the rule or its enforcement impinges on some policy of the federal labor law, the regulation of the relationship between union and employee is a contractual matter governed by local law. As the trial examiner put it in this case, the Board "never intended . . . to suggest that the disciplinary action[s] in enforcement of [union] rules . . . were affirmatively protected under the Act, as opposed to merely being not violations thereof." It is thus a "federally unentered enclave" open to state law. 145 N.L.R.B., at 1133. (394 U.S. at 426, 89 S.Ct. at 1156)

Likewise, in N. L. R. B. v. Boeing Co., 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 854 (1973), the Supreme Court made reference to the applicability of state law. In *Boeing*, the issue was the reasonableness of a union fine imposed upon a member for crossing a picket line and the alleged violation of § 8(b)(1)(A) of the NLRA. The NLRB held that the validity of a fine did not depend on the reasonableness of the amount. The D.C. Circuit reversed, saying that an unreasonably large fine was coercive and restraining within the meaning of the NLRA. The Supreme Court reversed the appellate court and held that

when the union discipline does not interfere with the employee-employer relationship or otherwise violate a policy of the National Labor Relations Act, the Congress did not authorize it [the Board] "to evaluate the fairness of union discipline meted out to protect a legitimate union interest." (412 U.S. at 78, 93 S.Ct. 1952, at 1958)

As in the *Scofield* case, the merits of *Boeing* are not relevant to the case at bar. The plaintiffs apparently cite this case because of the following language:

While the line may not always be clear between those matters that are internal and those that are external, to the

extent that the Board was required to examine into such questions as a union's motivation for imposing a fine it would be delving into internal union affairs in a manner which we have previously held Congress did not intend. . . . Issues as to the reasonableness or unreasonableness of such fines must be decided upon the basis of the law of contracts, voluntary associations, or such other principles of law as may be applied in a forum competent to adjudicate the issue. Under our holding, state courts will be wholly free to apply state law to such issues at the suit of either the union or the member fined.

\*    \*    \*    \*    \*    \*

. . . The relationship between a member and his union is generally viewed as contractual in nature, (citations omitted) and the local law of contracts or voluntary associations usually govern the enforcement of this relationship. (Citations omitted)

Thus, while the imposition of the fines was not a violation of the NLRA, state courts, applying state law, were free to strike down the fine as unreasonable. The NLRB had no jurisdiction to declare the fines to be unreasonable because the issue was solely one of internal union affairs.

The *Scofield* and *Boeing* cases were brought under the NLRA and thus, have only tangential relevance to the case at bar. However, it is true that the Court made fairly general statements about the usual applicability of state law to issues concerning the relationship between a union and its members. But the issue, as articulated by the plaintiff, in the motion in the case at bar was not present in the *Scofield* and *Boeing* cases —namely the authority of the PRB and the Constitutional Convention to act and rule as they did. Moreover, neither the *Scofield* or *Boeing* cases concerned the interpretation of a union constitution. The question confronted by this court in this motion is not whether the state law of voluntary associations should apply rather than some other law, but it is

whether or not this court has the authority to apply *any* law in the interpretation of the union constitution. And to answer this question, the court must look to federal labor law.

Although the plaintiffs phrase the issue as one of authority, it is important to note those issues of authority which are contested and those which are not. The plaintiffs contend that the Union officials had no authority under the union constitution to declare the contract ratified when the skilled tradesmen had voted to reject the contract. The defendants contend that they had the requisite authority and point to the PRB decision and Constitutional Convention Statement in support of this contention. This is an issue of authority which is contested.

However, the plaintiffs do not really contest the authority of the PRB to hear the issue, nor the authority of the Constitutional Convention to interpret the questioned constitutional provision. They submitted to the jurisdiction of the PRB and it is clear from the UAW constitution that the Constitutional Convention has the right to interpret the constitution. They do not question the procedures employed by either body. Thus, the plaintiffs do not contest the authority of these bodies to decide the issue; rather they contest the "authority" of the bodies to decide the issue *as they did*. This is not really a question of authority. Had these bodies decided in favor of the plaintiffs, the plaintiffs would agree that they had the authority to so rule. In arguing that they had no authority to rule in favor of the defendants, the plaintiffs are really arguing that the ruling was incorrect. It is important to note that the union bodies did not rule that they had the power to take a veto right away and were so doing. They ruled that there *never was* a veto right.

In arguing that the union constitution gave them a veto right and that the union bodies had no "authority" to take this right away, the plaintiffs are really arguing that the PRB decision and the

Constitutional Convention "interpretation" was really an amendment. The convention certainly did not classify its Statement as an amendment and in order to find that it was an amendment, this court would have to find that the Statement was not a fair and reasonable interpretation of the Constitution.

Thus, the court has now come full circle. A remaining question is this court's power to reinterpret the union constitution. Under the authority of the *Vestal* case, this court believes that as long as the union tribunal's decisions were not unfair or unreasonable, they must stand. Here, as in *Vestal*, the plaintiffs are challenging the authority of actions taken by union officials. A union "tribunal" in both the case at bar and *Vestal* determined that the officials had the requisite authority under the constitution. In both cases, the plaintiffs contended that the "tribunal" was wrong (had no authority to rule as they did). And as the Sixth Circuit said in *Vestal*, "(c)ourts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable."

After reviewing the constitutional provision and the material submitted by the parties, this court is of the opinion that while the union constitution could reasonably have been interpreted so as to find a veto power, it was neither unfair nor unreasonable to conclude that there was not and never had been any veto power. As long as the interpretation that there *never was* a veto power is fair and reasonable, the interpretation has not taken away any rights, for the right never existed. Thus, since the highest tribunal of the Union, the Constitutional Convention, has interpreted the questioned provision in a fair and reasonable manner, this court may not reinterpret that provision. Although the court relies on the existence of an interpretation by the Convention, it is cognizant that the ruling of the PRB

may also be sufficient to foreclose reinterpretation.

For the above stated reasons, the defendants' motion for summary judgment is granted. An appropriate order shall be submitted.