**TRUCK DRIVERS, CHAUFFEURS, AND HELPERS UNION, LOCAL 42 et al.**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA et al.**

**Civ. A. No. 73-850-MA.**

United States District Court,
D. Massachusetts.

Dec. 31, 1979.

Bruce E. Holbein, Maynard, Mass., for plaintiffs.

James T. Grady, Boston, Mass., for Local 25.

Robert M. Baptiste, Roland P. Wilder, Jr., Washington, D. C., for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action brought by Truck Drivers, Chauffeurs and Helpers Union, Local 42 and its officers (Local 42), against the International Brotherhood of Teamsters (International), and against the Teamsters and Helpers Union, Local 25 and its officers (Local 25). The action is brought pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and alleges that the various defendants have breached provisions of both the Constitution of the International and the Charter granted to Local 42 by the International.

Specifically, Local 42 alleges that the Constitution of the International and the Charter it holds from the International gives it an exclusive right to represent members of the International Teamsters who are employed within the territorial jurisdiction set forth in its charter. It complains that Local 25 and the International violated these exclusive representation provisions by refusing to transfer to Local 42 certain members whose employer moved from a town within Local 25's geographic jurisdiction to a town within the charter geographic jurisdiction of Local 42. Local 42 further complains that the General Executive Board of the International violated certain of its constitutional provisions and Local 42's charter by permitting Local 25 to retain the membership of these relocated employees, and that it thereby attempted to legislate a new constitutional policy for the

International in the form of a set of rules purporting to govern future jurisdictional disputes in violation of the International constitution. It is alleged that this attempt not only violated the policy of the Constitution, but it also violated the provision that the Convention was to be the sole source of legislative power.

Both parties have filed motions for summary judgment. The record, including a comprehensive set of factual stipulations, presents the following factual setting.

The parties are voluntary, unincorporated labor organizations. Local 42 was chartered by and affiliated with the International in April, 1903. It has approximately 3,000 members and is headquartered in Lynn, Massachusetts. The International has approximately 2,000,000 members in 749 locals throughout the United States and is headquartered in Washington, D. C. Local 25 was chartered by and affiliated with the International in 1903 and its current charter was issued in 1940. Local 25 has approximately 12,000 members and is located in Charlestown, Massachusetts. The parties have stipulated that they are labor organizations representing employees in an industry affecting commerce within the meaning of the Act. 29 U.S.C. § 152(2), (5) and (7).

On June 6, 1952, the International revised Local 42's charter to include the following geographic jurisdiction:

The jurisdiction of Local 42 covers the following geographic area; Essex County from Revere, Massachusetts, east to and including Rockport and Gloucester, Ipswich, etc., South to Salem and Lynn, etc., west as far as Lynnfield and into Middlesex County to Wakefield, North Reading and Stoneham.

Local 42's members work in a wide variety of trades and crafts throughout the designated geographic area. Local 25, on the other hand, does not have a specified geographic area. The charters of approximately 234 Teamster locals describe a territorial jurisdiction.

Joint Council No. 10 is an affiliate of the International established pursuant to the International Constitution. It is a regional

council comprised of all local unions within Massachusetts, Maine, New Hampshire, Vermont and Rhode Island. Locals 42 and 25 are members of Joint Council No. 10.

The New England Supplemental Freight Agreement to the National Master Freight Agreement is a collective bargaining agreement. The parties to this Agreement are employers and local unions affiliated with the International in the New England area. In 1972, approximately 5,500 members of Local 25 were covered by this agreement. Approximately 300 of Local 42's members were subject to this agreement in 1972. Sanborn Motor Express, Inc. (Sanborn), an employer, has been a signatory to this agreement since 1961 and was bound by this contract in 1965.

Local 25 has been the exclusive bargaining agent for workers employed by Sanborn since July 29, 1948. At that time, Sanborn was located at 167 Vassar Street, Cambridge, Massachusetts. Sanborn later moved to 230 Western Avenue, Allston, Massachusetts and had fifteen employees. Subsequently, the company relocated to Corporation Way, Medford, Massachusetts and remained there until 1965. During 1965, Sanborn had 90 employees, all of whom were members of Local 25. On May 10, 1965, Sanborn closed its Medford terminal and moved its entire operation to Stoneham, Massachusetts, a distance of seven miles. Stoneham and Medford are contiguous communities. Stoneham is located within the territorial jurisdiction of Local 42. Medford is within the "traditional" area served by Local 25.

Following Sanford's move to Stoneham, Richard H. Hunt, Secretary-Treasurer and Business Agent of Local 42, wrote to William J. McCarthy, President of Local 25, requesting that all of Local 25's members who were employed by Sanborn be transferred to Local 42. Upon receipt of this letter, McCarthy orally notified Hunt of Local 25's refusal to transfer the Sanborn workers. Hunt then requested that Joint Council No. 10 consider the matter.

On June 22, 1965, the Executive Board of Joint Council No. 10 held a hearing into the jurisdictional dispute between Local 42 and Local 25 concerning the Sanborn employees. This hearing was conducted pursuant to Article XII, Section 12 of the International Constitution adopted July 3–4, 1961, and subsequent constitutions. On June 23, 1965, Thomas C. Healy, Secretary-Treasurer of Joint Council No. 10, announced the decision of the Executive Board of Joint Council No. 10. The Executive Board sustained the request of Local 42 and, accordingly, ordered Local 25 to transfer all of its members employed by Sanborn to Local 42.

On July 2, 1965, William J. McCarthy telegrammed James R. Hoffa, General President of the International, and requested that the decision of Joint Council No. 10 be held "in abeyance" pending an appeal of that decision to the General Executive Board of the International. On July 9, 1965, Hoffa stayed the Joint Council No. 10 decision pending appeal to the General Executive Board. This stay was subsequently affirmed by the General Executive Board.

On January 29, 1969, the General Executive Board conducted a hearing concerning the dispute between Locals 42 and 25. Hunt and McCarthy appeared at the hearing and presented evidence and arguments on behalf of their respective locals. On May 1, 1969, the General Executive Board voted unanimously to authorize Frank E. Fitzsimmons, General Vice President of the International, to appoint a committee to study the issues raised in the dispute. This committee was called the Special Jurisdictional Committee. The committee was appointed, met and, ultimately, submitted a report to the General Executive Board. Upon receipt of "the findings and conclusions of the Special Jurisdictional Committee" the General Executive Board, on July 25, 1972, adopted and partially modified the report and concluded "that in any event any employer having a contract with either Local 42 or Local 25 moves his place of business, the local Union holding the contract covering the employees of the employer at the time of the move, [sic] shall continue to represent the employees, provided the move does not extend beyond a twenty-

five (25) mile radius." The General Executive Board modified the committee's twenty-five mile suggestion by substituting a forty (40) mile radius. Thus, the General Executive Board reversed the decision of Joint Council No. 10 and permitted Local 25 to maintain the Sanborn employees in its membership.

Local 42 did not appeal the decision of the General Executive Board to the next general convention (June, 1976) as it could have pursuant to Article IX, Section 1 and Article III, Section 1 of the International Constitution.

Local 42 then commenced this action, claiming that the General Executive Board, in reversing the decision of Joint Council No. 10, violated Local 42's revised charter and provisions of the International Constitution.

At the outset, the International argues that this Court does not have jurisdiction to hear this dispute, and, secondly, Local 42 has not exhausted its internal remedies. We address those arguments first.

### 1. *Jurisdiction*

Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), provides:
(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In construing the term "contract," the Supreme Court held that the legislative history of Section 301(a) "makes clear that the basic purpose of § 301(a) was not to limit, but to expand, the availability of forums for the enforcement of contracts made by labor organizations." *Dowd Box Co. v. Courtney*, 368 U.S. 502, 508–09, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962). Thus, contracts between two labor organizations are enforceable in Section 301(a) actions.

*Retail Clerks International Association v. Lion Dry Goods, Inc.*, 369 U.S. 17, 26, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962); *Local Union No. 657 v. Sidell*, 552 F.2d 1250, 1252 (7th Cir. 1977), *cert. denied*, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977). Because the term " '[c]ontract' in labor law is a term the implication of which must be determined from the connection in which it appears," *Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., supra*, 369 U.S. at 28, 82 S.Ct. at 548, the First Circuit and other circuits have concluded that a union constitution may, in appropriate circumstances, be considered a section 301(a) contract. *Local 1219 v. United Brotherhood of Carpenters and Joiners of America*, 493 F.2d 93, 95–96 (1st Cir. 1974); *see, Local Union No. 657 v. Sidell, supra* at 1252–55; *Trail v. International Brotherhood of Teamsters*, 542 F.2d 961, 966–68 (6th Cir. 1976); *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1247–49 (2d Cir. 1970); *Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 917 (4th Cir. 1963), *cert. denied*, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *DiGrazia v. United Brotherhood of Carpenters and Joiners of America*, 452 F.Supp. 582, 584 (W.D.Pa.1978), *aff'd mem.*, 594 F.2d 854 (3d Cir. 1979); *compare, Smith v. United Mine Workers of America*, 493 F.2d 1241, 1243 (10th Cir. 1974) (§ 301(a) does not confer jurisdiction of a dispute between a parent and a local union over the meaning of the parent's constitution); *Hotel & Restaurant Employees Local 400 v. Svacek*, 431 F.2d 705, 706 (9th Cir. 1970) (union constitution is not a contract under § 301(a) in dispute between local union and member thereof). Similarly, a local union charter may be a contract cognizable under section 301. *Trail v. International Brotherhood of Teamsters, supra* at 968.

In order to take jurisdiction under section 301 of a controversy involving an interpretation of a union constitution, this Court must find that there is "enough of a nexus between the interpretation of the constitution and external labor relations to warrant taking jurisdiction." *Studio Electrical Technicians v. International Photog-*

raphers of the Motion Picture Industries, Local 659, 598 F.2d 551 (9th Cir. 1979); Stelling v. International Brotherhood of Electrical Workers, 587 F.2d 1379, 1384 (9th Cir. 1978); Local 1219 v. United Brotherhood of Carpenters and Joiners of America, supra; see, 1199 DC, National Union of Hospital Health Care Employees v. National Union of Hospital and Health Care Employees, 175 U.S.App.D.C. 70, 72–73, 533 F.2d 1205, 1207–08 (D.C.Cir. 1976).

■ In the instant controversy, the parties are involved in a territorial dispute which concerns the authority of a union affiliate, under its charter and the International constitution, to act as the exclusive bargaining agent for workers employed by Sanborn. This dispute relates to the ability of one local union affiliate to represent all employers within a designated region who are engaged in collective bargaining relations with workers represented by the International. Finally, the parties are before the Court to determine whether Local 42 or Local 25 should represent Sanborn workers in the prosecution of grievances, arbitration of disputes and in other matters which relate to wages, hours, and conditions of employment. Because this action seeks an interpretation of the International's constitution (and a charter issued pursuant thereto) which will affect employer-employee relations with Sanborn, this Court should take jurisdiction under section 301(a). Local 1219 v. United Brotherhood of Carpenters and Joiners of America, supra at 96.

## 2. Exhaustion Requirement

Article XII, Section 12 of the International's constitution, adopted July 3–4, 1961 and appearing in subsequent constitutions, provides, in part:

Where two (2) or more local Unions are in dispute concerning jurisdiction, there shall be no work stoppage of the involved operation, but such controversy shall be submitted for determination to the Joint Council Executive Board. If any party to such dispute is aggrieved by the decision of the Joint Council Executive Board, it may appeal to the General President for the appointment of a special committee which in his discretion he may appoint for the purpose of holding a hearing and making a report and recommendations on the issues raised. The committee shall make its report and recommendations to the General Executive Board for its decision, which shall be final and binding. (emphasis added)

Article IX, Section 1 of the International's constitution provides in part:

The General Executive Board shall have the authority to interpret and apply the Constitution and laws of the International Union and to decide all questions of law thereunder subject to appeal to the next Convention.[1]

Local 42 freely admits that it did not appeal the General Executive Board's determination to the next convention pursuant to Article IX. It suggests, however, that the "final and binding" clause in Article XII, Section 12 did not require it to make an appeal in order to exhaust intra-union remedies.

■■ When clauses of a written agreement appear to conflict, a court must read them as if they are not in conflict if such an interpretation is reasonably possible. Keck v. Employees Independent Association, 387 F.Supp. 241, 251 n. 20 (E.D.Pa.1974). Here, it appears that the Article XII, Section 12 finality clause is inconsistent with the Article IX, Section 1 clause requiring an appeal to the general convention of all decisions of the General Executive board. Viewing these provisions together, this Court concludes that Local 42 had an obligation to appeal to the next convention before commencing this action because Article IX, Section 1 is all-inclusive and subjects all decisions of the General Executive Board to review by the convention. Because Local

1. Article III, Section 1 of the International constitution provided that "the International Convention shall be the supreme governing authority of the International Union and shall have the plenary power to regulate and direct the policies, affairs and organization of the International Union."

42 failed to appeal to the next convention it did not exhaust all intra-union remedies before commencing this action.

■ This failure, however, is not dispositive. The general policy against judicial interference in the internal affairs of unions is well established. *Local Union No. 657 v. Sidell, supra* at 1254; *Trail v. International Brotherhood of Teamsters, supra* at 968; *Printing Specialties and Paper Products District Council v. International Printing and Graphic Communications Union*, 466 F.Supp. 13, 18 (E.D.Tenn.1978); *Local Union 1219 v. United Brotherhood of Carpenters and Joiners of America*, 314 F.Supp. 148, 151 (D.Me.1970), *aff'd*, 493 F.2d 93 (1st Cir. 1974); *see*, Summers, *The Law of Union Discipline: What the Courts Do In Fact*, 70 Yale L.J. 175, 207–10 (1960); Cox, *The Role of Law in Preserving Union Democracy*, 72 Harv.L.Rev. 609, 615 (1959); Summers, *Legal Limitations on Union Discipline*, 64 Harv.L.Rev. 1049, 1086–92 (1951). This policy obligates unions to attempt an internal resolution of their disputes before they seek a judicial resolution of their controversies in § 301 actions. *Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 917 (4th Cir. 1963), *cert. denied*, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963). This exhaustion requirement is, however, waived upon a showing that an effort to pursue intra-union remedies would be "futile, or result in irreparable injury because of probable delay," *Local Union 1219 v. United Brotherhood of Carpenters and Joiners of America*, 314 F.Supp. at 151, or where the union remedy would be unreasonable because of probable delay. *Keck v. Employees Independent Association, supra* at 251 n. 19; *Welch v. Breckenridge*, 284 F.Supp. 125, 129 (W.D.Ark.1968); *Parks v. International Brotherhood of Electrical Workers*, 203 F.Supp. 288, 294–95 (D.Md. 1962), *rev'd on other grounds*, 314 F.2d 886 (4th Cir. 1963), *cert. denied*, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963); *Local Union No. 28 v. International Brotherhood of Electrical Workers*, 197 F.Supp. 99, 107 (D.Md.1961).

■ Where a General Executive Board's decision was issued in 1970, too late for the 1970 convention, and the next general convention was scheduled to convene in 1974, the First Circuit concluded that it would be unreasonable to require a local union to wait four years to exhaust its intra-union remedies by appealing to the convention. *Local 1219 v. United Brotherhood of Carpenters and Joiners of America, supra* at 95. In this case, the General Executive Board issued its decision in July, 1972. The International's next quinquennium convention was scheduled to commence in June, 1976. Local 42 would therefore have been required to wait four years in order to exhaust the internal remedies available. Such a delay, in the final resolution of this intra-union controversy, would be unreasonable. *Local 1219 v. United Brotherhood of Carpenters and Joiners of America, supra* at 95; *Printing Specialties and Paper Products District Council v. International Printing and Graphic Communications Union, supra* at 18.

■ Turning to the merits of the dispute, it is well-established that courts are reluctant to substitute their judgment for that of union officials in the interpretation of a union's constitution and bylaws, and will interfere only where the official's interpretation is not fair and reasonable. *Local Union No. 657 v. Sidell, supra* at 1257; *Gordon v. Laborers' International Union of North America*, 490 F.2d 133, 138 (10th Cir. 1973), *cert. denied*, 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 62 (1974); *Pignotti v. Local # 3*, 477 F.2d 825, 831 (8th Cir. 1973), *cert. denied*, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973); *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971), *cert. denied*, 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972); *Farrington v. Benjamin*, 468 F.Supp. 343, 350 (E.D.Mich.1979); *Case v. International Brotherhood of Electrical Workers*, 438 F.Supp. 856, 862 (D.Alaska 1977), *aff'd sub nom., Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379 (9th Cir. 1978); *Local 1 (ACA) v. International Brotherhood of Teamsters*, 419 F.Supp. 263, 288 (E.D.Pa.1976); *Gardner v. Woodcock*, 384 F.Supp. 239, 247 (E.D.Mich.1974); *see*,

Leslie, *Federal Courts and Union Fiduciaries*, 76 Col.L.Rev. 1314, 1319 (1976). This limited standard of review is based on "the general congressional policy to allow unions great latitude in resolving their own internal controversies . . ." *Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964).

The principal issue in this case is whether the International's General Executive Board, in affirming the stay of Joint Council No. 10 and in reversing Joint Council No. 10's decision in the territorial dispute, acted fairly and reasonably in interpreting the International constitution and Local 42's charter.

■ Article VI, Section 2(a) of the 1961 constitution provided:

The General President shall have authority to interpret the Constitution and laws of the International Union and to decide all questions of law thereunder between meetings of the General Executive Board, and shall have authority, unless some other procedure is expressly provided in this Constitution, to settle and determine all grievances and disputes submitted to him by Joint Councils, Local Unions, and other subordinate bodies, or members between meetings of the General Executive Board, all subject to appeal to the General Executive Board, and, thereafter to the next Convention in the manner and to the extent prescribed in this Constitution. When any action is taken as provided herein between meetings of the General Executive Board such action shall be reported to the next meeting of the General Executive Board for its approval, reversal or modification, if an appeal has been taken.

In accordance with this broad grant of authority and in accordance with Article XIX, Section 9(d),[2] James R. Hoffa, President of the International, stayed the decision of Joint Council No. 10, pending appeal to the General Executive Board. During its next quarterly meetings, the General Executive Board considered the propriety of the stay and ratified Hoffa's July 20, 1965 decision.

Local 42 suggests that, because Article XII, Section 12 contained no provision authorizing the General President to stay a Joint Council decision pending appeal, Hoffa had no authority to issue the stay. Additionally, it argues that the 1966 amendments to Article XII, Section 12 granting to the General President and the General Executive Board authority to stay Article XII decisions pending appeal, constituted a *post facto* grant of authority.

Article VI, Section 2(a) and Article XII, Section 9(d) appear to give the General President broad authority to stay the effectiveness of any decision pending appeal. These provisions clearly vested Hoffa with authority to temporarily set aside the Joint Council No. 10 decision pending an appeal to the General Executive Board.

■ As to the authority of the General Executive Board to reverse the decision of Joint Council No. 10 and to create the forty-mile rule, Local 42's principal contention is that the General Executive Board violated Article XVII of the 1961 Constitution and successive constitutions in rendering its decision in the Sanborn territorial dispute. Article XVII, entitled "Chartered Miscellaneous Local Unions," provides:

Section 1(a). Whenever there is not a sufficient number of any one (1) craft, a mixed Local Union may be formed. There shall be only one (1) Local Union of any craft chartered in any city, except in localities where it may be necessary, and in such cases the General Executive board shall, after the consultation with the

---

2. Article XIX, Section 9(d) provided:

(d). In the event of non-compliance with the decision handed down by a trial or appellate body, the member, elected Business Agent, officer, Local Union, or Joint Council shall stand suspended from all privileges of the International Union until the provisions of the decision have been complied with, unless the General President has waived payment of a fine or stayed the effectiveness of the decision pending appeal. If, however, the decision carries with it an order of expulsion, then such order of expulsion shall immediately take effect, unless the General President has stayed the effectiveness of the decision pending appeal.

Joint Council, have full power to determine the advisability of issuing a separate charter.

(b). The General Executive Board is authorized by majority vote to approve the issuance of a separate charter to any group of members of any existing Local Union or Local Unions.

(c). When a separate charter is issued to a separate group provided in subsection (b), the members within the jurisdiction of the newly-chartered Local Union must be transferred to said new Local Union. It shall be incumbent upon the original Local Union to provide the necessary funds with which the newly constituted Local Union shall obtain its charter, with a maximum equivalent to (3) months dues per member for the number being transferred unless the Local Union determines the amount shall be more. In no event shall the original Local Union be required to pay out more than fifty percent (50%) of its assets.

The parties have stipulated that Local 42 is a "mixed local union" and, in that capacity, represents workers employed in a number of industries, occupations and crafts. While some of its members are employed in a variety of craft positions, Local 42 is not, for purposes of Article XVII, a "craft" local. Because its membership is drawn from a wide range of occupations, trades and crafts and not from a single occupation, trade or craft, this Court must conclude that Local 42 is not a craft local. Moreover, Local 42's charter does not include any particular craft designation.

Article XVII, Section 1(a) grants exclusive territorial jurisdiction to craft locals chartered in a particular city except where the General Executive Board determines that there is a need for more than one such local within the municipality. By definition, a craft local may represent workers engaged in any *particular* craft. Unlike a mixed local, a craft local may not generally represent workers in any industry.

Because the focus of Article XVII is craft locals—not mixed locals—the absence of a craft designation in Local 42's charter and the fact that Local 42's membership is derived from a variety of occupations, industries and crafts leads to the inescapable conclusion that Article XVII is inapplicable to this dispute. It is manifest that, under Article XVII, craft locals shall have exclusive jurisdiction over all organized craft workers employed within a designated area. This constitutional grant of exclusive jurisdiction does not, however, extend to mixed local unions.

Local 42 argued that, because it represents workers employed in craft trades, it is included within the Article XVII grant of exclusive jurisdiction. The plain language of Local 42's charter indicates that it has the exclusive right to *organize* workers in any occupation, industry or craft within the designated region. The charter does not limit its right to organize only workers in a particular trade, craft or occupation. Nor does the charter grant Local 42 the exclusive right to *represent* all members of the International who are employed within the designated area.

Local 42's right to organize workers in its territorial jurisdiction was not affected by the decision of the General Executive Board in resolving this dispute. The decision merely recognized the right of a local union to continue to represent workers who were originally organized by that local when the shop relocates a short distance from its former headquarters. Such a determination is in full accord with the practice, policy and tradition of the International to permit a mixed local union to continue to represent members employed outside its designated jurisdiction.

This Court therefore concludes that the General Executive Board acted fairly and reasonably in its interpretation of Local 42's charter and Articles XII and XVII of the International constitution. Accordingly, the General Executive Board's conclusion that Local 42 did not have exclusive jurisdiction over all Teamster-organized workers employed within the designated jurisdiction must not be upset. This conclusion is consistent with the policy requiring this Court to refrain from interfering in the internal affairs of unions.

Having concluded that the General Executive Board made a fair and reasonable interpretation of the International constitution and Local 42's charter in concluding that Local 42 did not have the exclusive right to represent all Teamster members employed within its region, we need not decide whether the General Executive Board was authorized to promulgate the "forty-mile rule."

In accordance with the above, the defendants' motions for summary judgment are to be allowed.

SO ORDERED.