**Richard KECK et al.**

v.

**EMPLOYEES INDEPENDENT ASSOCIATION, by Earl J. Wenner, its General Chairman, et al.**

**Civ. A. No. 74–429.**

United States District Court,
E. D. Pennsylvania.

Dec. 23, 1974.

Richard H. Markowitz, Stephen C. Richman, Philadelphia, Pa., for plaintiffs.

Sheldon Rosenberg, Jacob Nogi, Scranton, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs, as individual members of defendant Employees' Independent Association (EIA) and as members and officers of divisions of defendant EIA, have filed this action on their own behalf and on behalf of the General Office Division, Lehigh Division, and Pottsville Division of defendant EIA.[1] They allege that pursuant to Article XII[2] of the Union Constitution, they initiated petitions for a referendum to amend the Union Constitution and submitted it to the officers of the governing body of the union who refused to submit them to the general membership.[3] This refusal, plaintiffs contend, violates their rights under Sections 101(a)(1) (29 U.S.C. § 411(a)

1. Plaintiffs originally filed this action as individual members of EIA against EIA and the General Chairman of EIA. Leave was granted to file an amended complaint at which time plaintiffs added the General Office Division, Lehigh Division, and Pottsville Division of EIA as additional plaintiffs and the remaining officers of EIA as additional defendants. On October 9, 1974, plaintiffs filed a supplemental complaint to add additional members and divisions of EIA as plaintiffs. The supplemental complaint sets forth events which have happened since the filing of the amended complaint, does not alter the substantive allegations of the amended complaint and defendants have not opposed it. We granted plaintiff leave to file the supplemental complaint.

2. Article XII of the Union Constitution provides:

Section 1. General

This Constitution may be amended by a majority vote of the Association membership voting in the manner herein provided.

Section 2. Procedure for Amending

This Constitution may be amended in either of two ways:

(a) A majority of the General Committee may vote in favor of a particular amendment proposed by any member of the General Committee. Within forty-five (45) days thereafter, such proposed amendment shall be submitted to the general membership of the Association to vote thereon in accordance with the referendum procedure set forth in Article X, Section 2 and 3 of this Constitution.

(b) A petition containing the proposed amendment and signed by one-fifth (1/5) of the membership of a particular Division, after being submitted to the Division Committee, shall then be submitted by such Division Committee to the General Committee of the Association. Thereafter such proposed amendment shall be submitted to the general membership of the Association as provided in paragraph (a) of this Constitution.

Article X, Sections 2 and 3 provide for the method and time for the general membership vote.

3. The stated purpose of the petitions to amend the constitution is to unite the members of EIA with the members of the International Brotherhood of Electrical Workers (IBEW) for more effective bargaining with the employer. The effect of the amendment would be the issuance of an IBEW Local Union Charter to EIA which shall cause the termination of EIA. EIA's officers, however, would remain in office with the authority to carry out all obligations arising as of or prior to the effective date of the amendment.

(1)), and 501 (29 U.S.C. § 501) of the Labor Management Reporting and Disclosure Act (LMRDA) and Section 301 (29 U.S.C. § 185) of the Labor Management Relations Act (LMRA).

Defendants are the parent union (EIA) and individual members and officers of the governing body (General Committee) of the parent union. Defendants admit that in accordance with the Union Constitution the individual plaintiffs, as members of EIA divisions, initiated petitions to amend the constitution, that the petitions were submitted to the respective EIA divisions, that the petitions submitted to the Lehigh and Pottsville divisions were submitted by these divisions to the General Committee, and that the General Committee refused to submit the petitions to the general membership. Defendants contend, however, that pursuant to Article XI[4] of the Union Constitution, they properly refused to submit the petitions since the petitions, if approved by the general membership, would destroy the identity of EIA.[5]

■ Defendants have filed motions to dismiss for failure to state a claim, lack of jurisdiction, and improper venue. Since matters outside the pleadings are presented by defendants, we shall treat defendants motion to dismiss for failure to state a claim as one for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6). See George v. Hillman Transportation Company, 313 F.Supp. 1115, 1116 (W.D.Pa.1970). Plaintiffs have filed a cross motion for summary judgment. Defendants have also moved to transfer to the Middle District of Pennsylvania under Section 1404(a). This motion is denied.[6]

■ Before entertaining the remaining motions, we shall consider whether or not jurisdiction is pre-empted by the National Labor Relations Board (NLRB). When an activity is arguably subject to Section 7 or 8 of the National Labor Relations Act (NLRA), we must defer to the exclusive jurisdiction of the NLRB. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). As the Supreme Court recently stated, Garmon "established the general principle that the National Labor Relations Act pre-empts state and federal jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." Amalgamated Association of Street Electric Railway & Motor Coach Em-

---

4. Article XI of the Union Constitution provides:

Section 1. This Association may, by a majority referendum vote of the membership, affiliate with other labor organizations, provided, that by such affiliation this Association shall not lose its identity nor forfeit any autonomy over its own affairs.

Section 2. Affiliation may be terminated by a majority referendum vote of the membership.

Section 3. Referendum voting on affiliation or termination of affiliation shall be conducted in manner similar to that required for the ratification of agreements as outlined in Article X, Sections 2 and 3 hereof.

5. The General Committee adopted the following resolution:

The General Committee of the EIA interprets the . . . petitions as not being petitions to amend the EIA Constitution under Article XII but are instead petitions to affiliate under Article XI. As such, the General Committee of the EIA interprets such provision as contrary to . . . Ar-ticle XI because they would deprive the EIA of its identity and would force the EIA to forfeit its autonomy over its own affairs. Therefore, the EIA shall not pass upon the aforementioned petitions.

6. Defendants have filed a motion to transfer to the Middle District of Pennsylvania pursuant to § 1404(a), Title 28 U.S.C. In considering whether or not factors exist warranting a transfer, we are vested with a wide discretion. Plum Tree, Inc. v. Stockment, 488 F.2d 754 (3 Cir. 1973). Our duty is to consider all "relevant" factors in a case to determine whether or not on balance the trial would more conveniently proceed and the interests of justice would be better served in the transferee court. Fitzgerald v. Central Gulf Steamship Corp., 292 F.Supp. 847 (E.D.Pa.1968). Defendants have not satisfied this burden. They have failed to file affidavits, depositions, stipulations or other documents containing facts which establish the need to transfer. Atlantic Richfield Company v. Stearns-Roger, Inc., 379 F.Supp. 869 (E.D.Pa.1974).

ployees of America v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). The authority to determine representational matters under the Act is vested exclusively with the NLRB. National Association of Women's & Children's Apparel Salesmen v. F. T. C., 479 F.2d 139, 144 (5 Cir. 1973). The only possible question which the activity in this case raises is a question of who is the proper representative of the general membership. If we find that this question is raised, we must defer to the exclusive jurisdiction of the NLRB.

Plaintiffs claim that their petition is for an amendment of the Union Constitution, and defendants claim that the request is for an affiliation. Whether we label it an amendment or an affiliation, the effect is that EIA will unite with the International Brotherhood of Electrical Workers (IBEW) and become a local of the IBEW.[7] It is not uncommon for such occurrences to take place, and often, when local unions change their affiliation from one labor union to another, the change is not by unanimous choice; frequently a number of members seek to continue the previous affiliation. *See* CCH Labor Law Reporter, Labor Relations ¶ 3157 (1974). In American Range Lines Incorporated and Marine Beneficial Association, 13 NLRB 139 (1939), the NLRB stated that its policy was to treat a change in affiliation as a matter of internal union policy having no impact on the employees' choice of a representative. The NLRB does not consider an intra union dispute over affiliation as giving rise to a question of who is the proper representative of the union membership unless it determines that the dispute is so basic as to create such confusion in the bargaining relationship that stability can be restored only by an election. Gate City Optical Company, 175 NLRB 172 (1969); Hershey Chocolate Corporation & Local 464 Bakery and Confectionery Workers IVA, 121 NLRB 124 (1958).

This dispute does not present the question of who is the proper representative of the union membership. Since an affiliation does not necessarily raise this question, and since confusion would not arise until after the decision to affiliate, a petition to allow the union members to vote on whether or not to affiliate does not raise this question. Thus, we conclude that there is no intrusion upon the jurisdiction of the NLRB.

### SECTION 101(a)(1)

A basic purpose of the LMRDA is to assure "full and active participation by the rank and file in the affairs of the union." American Musician Federation v. Wittstein, 379 U.S. 171, 182–183, 85 S.Ct. 300, 307, 13 L.Ed.2d 214 (1964). Plaintiffs contend that Section 101(a)(1) of the LMRDA provides for this broad participation by guaranteeing union members the right to participate in the deliberation of a labor organization and vote upon its business.[8] Plaintiffs find authority for this proposition in Gurton v. Manuti, 235 F.Supp. 50 (S. D.N.Y.1964). In *Gurton* Judge Levet was presented with the question of whether, in refusing to accept two proposed amendments for publication and consideration at the next by-law meeting, the local union's Executive Board violated Section 101(a)(1) and (2). The Executive Board challenged the court's jurisdiction, claiming that the complaint did no more than allege violation of the local by-laws. While recognizing that a violation of a union by-law does not in and of itself give rise to a

---

7. For the purposes of this case we will refer to this process as an affiliation.

8. Section 101(a)(1) provides:
   (a)(1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by-laws.

federal claim, Judge Levet noted that by-laws are only the starting point of any analysis in determining Section 101 violations and that the inquiry must be directed towards determining whether or not the conduct violates the rights guaranteed by Section 101. After discussing the union's statutory right to "prescribe and apply reasonable rules to protect themselves against undue disruption of their institutional function," 235 F. Supp. at 55, Judge Levet rejected as unreasonable the Executive Board's interpretation and held that the refusal of the Executive Board to permit the membership to vote on the proposals would appear to violate plaintiffs' rights guaranteed by Sections 101(a)(1) and (2).

Later the same year the Supreme Court was presented with a claim that "provisions of the union bylaws and national constitution violated the Act in that they infringed" the right of members of the local union to nominate candidates in elections of the local, a right guaranteed to each member of the local by Section 101(a)(1). Calhoon v. Harvey, 379 U.S. 134, 135, 85 S.Ct. 292, 293, 13 L.Ed.2d 190 (1964). Responding to the claim that Section 101(a)(1) guarantees a broad right to nominate, Justice Black stated:

> Plainly, this is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and *vote*. And Congress carefully prescribed that even this right against discrimination is 'subject to reasonable rules and regulations' by the union. The complaining union members here have not been discriminated against in any way and have been denied no privilege or right to *vote* or nominate which the union has granted to others . . . It is true that they were denied their request to be candidates, but that denial was not a discrimination against their right to

nominate, since the same qualifications were required equally of all members. (emphasis added)

In Gurton v. Arons, 339 F.2d 371 (2 Cir. 1964),[9] the Second Circuit was faced with a Section 101(a)(1) question arising from the same fact pattern as that of Gurton v. Manuti. At the direction of Judge Levet in Gurton v. Manuti the Executive Board of the local union placed the proposed resolution on the agenda of the by-laws meeting. The resolution was adopted by a majority vote, but the International Board held that the resolution violated the by-laws of the International and invalidated the vote. Plaintiffs in Gurton v. Arons claimed that the International's action denied their equal right to vote in elections or referendums and argued that "if they are not allowed to vote in accordance with the limitations on voting contained in the . . . resolutions, they will be denied their right to vote." Citing Calhoon v. Harvey the court in Gurton v. Arons held:

> But the guaranty of the qual right to vote is surely not a general commission for the federal courts to review the constitution and by-laws of the union. As long as no claim is made that provisions of the constitution and by-laws are being applied in such a way as to deny equality in voting, there is nothing in Section 101 which authorizes consideration of those documents. Section 101 grants no power to the courts to examine into whether by-laws were lawfully adopted or repealed.

In a concurring opinion in Gurton v. Arons, Chief Judge Lombard saw the more difficult question presented as whether or not the equal right to vote guaranteed by Section 101(a)(1) is infringed if union officers, acting without justification from the union by-laws, void the result of a properly conducted vote. Troubled by the absence of an im-

---

9. At the district court level Judge Tenney denied applications for preliminary injunctions and dismissed the complaint finding that there was no denial of an equal right to vote.

mediate available remedy if the federal courts did not take control of the matter, Judge Lombard noted that:

> This question cannot be answered by reference to the statutory bar on private post-election remedies found in § 403 of the Act, 29 U.S.C. § 483, for that section does not apply where the vote is not part of a union election. For the same reason, the recent decision of the Supreme Court in Calhoon v. Harvey (citation omitted) . . . at least does not directly control; the apparent rationale of that decision is that the specific guarantees of § 401, 29 U.S.C. § 481, with respect to union elections preclude the inference of similar rights in § 101(a)(1).[10]

Even with this narrow reading of *Calhoon* as a decision to avoid conflict between different titles of the LMRDA Judge Lombard recognized that:

> It would be disingenuous, however, not to find in Calhoon v. Harvey, the more general principle that § 101(a)(1) protects the right to vote only against relatively direct attack. I reluctantly conclude therefore that the more indirect attack involved in this case—arbitrarily voiding the result of a vote after it is taken—does not infringe the rights of the plaintiffs under § 101(a)(1).

Recently in Smith v. United Mine Workers of America, 493 F.2d 1241, 1244 (1974), the Tenth Circuit held that Section 102 does not confer jurisdiction unless Section 101(a)(1) has been violated and that Section 101(a)(1) is not violated unless "equal rights" guaranteed by Section 101(a)(1) are violated. There being no claim of any discrimination the court held that the district court had no jurisdiction.[11]

While federal courts have been active in vindicating the rights secured by Section 101, they are reluctant to exercise jurisdiction to enforce union constitutions and by-laws where there has been no violation of a specific right enunciated in Section 101. Martire v. Laborers' Local Union 1058, 410 F.2d 32, 36 (3 Cir. 1969); Navarro v. Gannon, 385 F. 2d 512, 516, n. 6, 520 (2 Cir. 1967), cert. den., 390 U.S. 989, 88 S.Ct. 1184, 19 L. Ed.2d 1294 (1968). See also Yanity v. Benware, 376 F.2d 197 (2 Cir. 1967), cert. den., 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1968); Comment 43 N.Y. U.L.Rev. 393, 398, 400 (1968). The action of the General Committee may have been a clear violation of the by-laws and constitution of EIA, but it does not violate Section 101 because plaintiffs do not allege that members or classes have been discriminated against in their right to vote in elections or referendums.[12]

---

10. In support of this interpretation of Calhoon v. Harvey, Chief Judge Lombard cites the concurring opinion of Justices Stewart and Harlan in *Calhoon*. Recently in Sheldon v. O'Callaghan, 497 F.2d 1276 (2 Cir. 1974), the Second Circuit was again faced with a § 101(a)(1) claim. Plaintiff members of the union, brought the action to compel the union officers to make a list of members of the union available to a mailing service chosen by defendants so that plaintiffs could send letters to all union members expressing their views and the views of their local on the issues involved in an *upcoming referendum*. The court distinguished *Calhoon* on the basis that *Calhoon* involved a union election rather than a referendum. It held, however;

> In this case . . . the defendant union officials' stiff-necked refusal even to provide their opponents access to the membership mailing list rendered the referendum procedure so patently unfair that

their conduct can fairly be deemed "a denial of the [members] *equal right to vote* in elections or referendums," 497 F.2d at 1283, n. 9 (emphasis added).

11. In *Smith* plaintiffs also claimed that their rights were violated under § 301. Defendant was an international union which was attempting to merge some of its intermediate local unions. Plaintiffs were local unions and members of local unions opposed to the merger.

12. Having denied a cause of action under § 101(a)(1) we need not discuss defendants' claim that venue under § 101(a)(1) was improper or that plaintiffs failed to exhaust their internal remedies under § 101(a)(4). For a thorough discussion of venue in § 101 cases, see Rota v. Brotherhood of Ry., Airline and S. S. Clerks, 338 F.Supp. 1176 (E. D.Pa.1972).

## SECTION 301

■ Section 301 provides:

Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Plaintiffs claim that the Union Constitution is a valid and binding contract within the meaning of Section 301 and that by refusing to submit plaintiffs' petitions to the general membership defendants violated the Union Constitution. Defendants argue that there has been no violation of the Union Constitution and, even if the Union Constitution has been violated, there has been no violation of a contract between labor organizations within the meaning of Section 301 because union constitutions are not contracts and Congress intended to make Section 301 applicable only to collective bargaining contracts.

The questions raised by the parties' contentions are these: (1) whether the word "contracts" as used in Section 301(a) is limited to collective bargaining agreements, (2) whether a union constitution is a "contract" within the meaning of Section 301(a), (3) whether a local union and its parent are "labor organizations" within the meaning of Section 301(a),[13] and (4) if the constitution is a "contract" within the meaning of Section 301, has there been a violation of the Union Constitution. The legislative history of Section 301(a) does not assist us in resolving these questions. The most that can be said of the legislative history is that Congress did not anticipate the questions which are before us. See Smith v. United Mine Workers of America, 493 F.2d 1241, 1242–1243 (10 Cir. 1974). Analysis of the case law on Section 301 discloses that "contracts" as used in Section 301(a) is not limited to collective bargaining agreements, that a local union and its parent can be labor organizations within the meaning of Section 301(a), and that the law is unsettled as to whether a union's constitution is a "contract" within the meaning of Section 301.

In Retail Clerks International Ass'n., Locals 128 and 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962), the Supreme Court held that Section 301(a) could not be limited to collective bargaining agreements because:

First. The Section says 'contracts' though Congress knew well the phrase 'collective bargaining contracts' (citations omitted) . . . Second. If 'contracts' means only collective bargaining contracts, the subsequent words 'or between any such labor organizations' are superfluous, for if there is a collective bargaining agreement between unions it follows that as to that agreement, one union is the employer and the other represents employees. (citations omitted). Congress was not indulging in surplusage: A federal forum was provided for actions on other labor contracts besides collective bargaining contracts. 369 U.S. at 25–26, 82 S.Ct. at 546–547.[14]

While Retail Clerks made it clear that some contracts which are not collective bargaining agreements are enforceable under Section 301, it did not say whether a union constitution is a "contract" or whether a parent union and its divisions can be labor organizations within

13. The parties have stipulated that both defendant EIA and divisions which are plaintiffs are labor organizations within the meaning of the LMRA.

14. Part of Justice Brennan's rationale in holding that § 301(a) was not limited to collective bargaining agreements was the recognition that the violation of contracts not collective bargaining agreements may disrupt interstate commerce and harm labor relations.

the meaning of Section 301. In Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886 (4 Cir. 1963), cert. den., 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), Judge Sobeloff carefully analyzed both of these questions as well as the possible interpretations of Section 301(a). He recognized as plausible the argument that this Section should be interpreted as granting jurisdiction only over contracts having an impact on labor-management relations and negotiated between wholly autonomous labor organizations. *See* Meltzer, "The Supreme Court, Congress, and State Jurisdiction Over Labor Relations: II," 59 Colum.L.Rev. 269, 297, n. 287 (1959); Note, "Applying the 'Contracts Between Labor Organizations' Clause of Taft-Hartley Section 301; A Plea For Restraint," 69 Yale L.J. 299 (1959). Nonetheless, he decided that Congress deemed it appropriate for federal courts to exercise jurisdiction over disputes between related organizations concerning union constitutions since they may have traumatic industrial and economic repercussions. He favored a broad view of Section 301(a) while recognizing a federal court's obligation not to regard this jurisdictional grant as inviting unrestrained judicial inventiveness in the areas of union structure and collective bargaining. 314 F.Supp. at 915–916. In Local Union 1219, etc. v. United Brotherhood of Carpenters & Joiners, 493 F.2d 93, 96 (1 Cir. 1974), the court, in holding that a union constitution is a "contract" and that the local and parent union are suable entities within the meaning of Section 301, stated:

> Although Congress did indicate some reluctance to "effect extensive and detailed statutory regulation of internal union affairs," (citations omitted), it is clear that the local and International are each suable entities under the act. When two such entities' relationship is a matter of contract, and that contract directly concerns the representation of workers in collective bargaining, there is no reason to assume that Congress did not intend the statute to apply simply because the two parties to the contract are related. Furthermore, this suit is on a contract and is not intended to enforce internal customs and practices of the unions which have not been reduced to a contract; exercising jurisdiction here will not involve the courts in regulating internal union matters which Congress did not intend to control. (citations omitted)[15]

The basic fear engendered by a broad interpretation of Section 301 is that the federal courts will become involved in solely internal union matters. Because of this fear the courts in Antal v. Budzanoski, 320 F.Supp. 161 (W.D.Pa.1970), Hotel & Restaurant Employees Local 400 v. Svacek, 431 F.2d 705 (9 Cir. 1970) and Smith v. United Mine Workers of America, *supra*, held that Section 301 did not confer federal jurisdiction over matters involving union constitutions. In *Smith* the court was presented with an appeal from a district court preliminary injunction forbidding an International union from merging several intermediate locals. While stating that the local and International are labor organizations, and Section 301(a) is not restricted to suits arising from collective bargaining agreements, it held:

> At the same time § 301(a) does not confer jurisdiction of a dispute between a parent union and a local union over the meaning of the parent's constitution. We recognize that § 301(a) must be liberally applied to promote industrial peace, but that principle has no application here. This controversy relates only to the construction and application of the union constitution and has nothing to do with labor-management relations. . . . A holding that the word "contracts" as used in § 301(a) encom-

---

15. This suit involved an action by a local union against the international for its failure to support the local in a jurisdictional dispute with other locals.

passes union constitutions would open the doors of the federal courts to every dispute between a parent union and a local union over the meaning and effect of the union constitution. 493 F.2d at 1243.

Although the concept of restrained judicial intervention into internal union affairs is well established, it is also well settled that Section 301(a) was adopted to promote industrial peace and prevent traumatic repercussions. We recognize our obligation not to enter every dispute between a parent union and local union, but at the same time we cannot accept the argument that Section 301(a) does not confer jurisdiction of a dispute between a parent union and a local union concerning the union constitution in situations where the dispute may concern representation and collective bargaining agreements and may have an impact on industrial peace. A holding that the word "contracts" as used in Section 301(a) includes union constitutions does not open the doors of the federal courts to every dispute between a parent union and a local union concerning the meaning of the union constitution because we still are obligated to determine whether the dispute may have an impact on labor-management relations. To the extent that Antal v. Budzanoski, *Svacek,* and *Smith* overemphasize the danger of judicial intervention in union affairs, we decline to follow them. When it is clear that an action is not intended to enforce internal union customs and practices and the relationship between the parties is contractual and may effect labor-management relations, there is no reason to assume Congress did not intend Section 301(a) to apply. Thus, if this dispute may have an impact on la-

bor-management relations and if the General Committee's actions were not authorized by the Union Constitution, Section 301(a) applies.

## SECTION 501

Section 501 declares that union officials "occupy positions of trust in relation to" the union and its members and requires union officers [16] to hold union money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and by-laws. Plaintiffs claim that the failure and refusal of the officers of the General Committee to submit the petitions to the general membership was not authorized by the Union Constitution and constituted a breach of fiduciary duty under Section 501. Defendants contend that Section 501 is designed for the single purpose of establishing responsibility on the part of union officers for the handling and managing of fiscal matters of the labor organization.

In Sabolsky v. Budzanoski, 457 F.2d 1245 (3 Cir. 1972), the Third Circuit rejected defendants' narrow construction of Section 501 as being limited to fiscal matters of the labor organization. After considering the legislative history and case law on Section 501, Judge Rosen concluded that Section 501, as finally enacted, "extends the fiduciary principle to all of the activities of Union Officials and other Union Agents or representatives." 457 F.2d at 1250.[17] Under this broad interpretation and application of Section 501, actions not authorized by the Union Constitution, which deny the general membership participation in the affairs of the union, constitute a breach of fiduciary duty im-

---

16. § 501 imposes liability only on the individual union officials. Pignotti v. Local 3 Sheet Metal Workers, 477 F.2d 825 (8 Cir. 1973).

17. Sabolsky v. Budzanoski is plaintiffs' appeal from Judge Weber's decision in Antal v. Budzanoski, *supra.* Plaintiffs claimed that their rights under §§ 101(a)(1), 501, and 301(a) were violated because the officers of

the Local and International acted in disregard of the Union Constitution. On finding that the District Court had subject matter jurisdiction under § 501 Judge Rosen reserved decision on plaintiffs' claims under §§ 101(a)(1) and 301(a) giving the trial court the opportunity to determine whether or not plaintiffs have a claim under those sections as the facts are developed.

posed by Section 501.[18] We adopt the broader view of Section 501 and hold that if the General Committee's action was not authorized by the Union Constitution, it constituted a breach of fiduciary duty under Section 501.[19]

## VIOLATION OF THE UNION CONSTITUTION

We have determined that a breach of a union constitution may give rise to a claim under Section 301 for violation of a contract between labor organizations and under Section 501 for breach of a fiduciary duty. We must now determine whether the action by the General Committee may have an impact on labor-management relations and whether the action by the General Committee was authorized by the Union Constitution.[20]

Keeping in mind that the purpose of plaintiffs' petitions is to unite EIA with IBEW for more effective bargaining with the employer, we find that the refusal by the General Committee to allow the membership to vote on whether or not to unite may have an impact on labor-management relations. On the question of violation of the Union Constitution, we find that the action by the General Committee was not authorized by the Union Constitution. The language of the Union Constitution is clear and unambiguous. Article XI permits affiliation of EIA with other labor organizations provided, that by such affiliation EIA shall not lose its identity nor forfeit any autonomy over its own affairs. Article XII requires the General Committee to submit a petition for amendment to the general membership provided that the petition is signed by one fifth ($\frac{1}{5}$) of the membership of a particular division and the petition has been submitted to the General Committee by the Division Committee.

Defendants' defense rests on Article XI. They argue that although they would normally be required to submit plaintiffs' petitions to the general membership, they properly refused because

18. In Moschetta v. Cross, D.D.C., 48 L.R.R. M. 2669 (1961), a breach of a union constitution was held to constitute a breach of fiduciary duty under § 501. In Kerr v. Shanks, 466 F.2d 1271, 1275 (9 Cir. 1972), the court was presented with a charge that defendants breached their fiduciary duties by refusing to hold a special referendum of the membership as required by the Guild Constitution and By-laws. The court did not answer whether or not a breach of trust occurs when non-fiscal matters are involved, but it refused to follow the narrow interpretation of § 501. In Johnson v. Nelson, 325 F.2d 646, 649–651 (8 Cir. 1963), Pignotti v. Local 3 Sheet Metal Workers Int. Assn., 477 F.2d 825 (8 Cir. 1973) and Cefalo v. Moffett, 146 U.S.App.D.C. 117, 449 F.2d 1193, 1198 n. 15 (1971) the courts held that § 501 actions are not limited to fiscal matters and extend to all activities of Union Officials.

19. Defendants' final contentions are that we should dismiss this action because venue is improper under § 301, 29 U.S.C. § 185(c) and § 501, 29 U.S.C. 501(b), and because plaintiffs have failed to exhaust their internal union procedures as required by § 501(b). § 301(c) grants jurisdiction to the district court in which the labor organization maintains its principal office or to any district in which its duly authorized officers or agents are engaged in representing or acting for employee members. § 501(b) grants jurisdiction to any district court of the United States. Plaintiffs satisfy the venue requirements under these sections since they are doing business in this district and are engaged in representing employee members in this district. §§ 301 and 501(b) require exhaustion of internal remedies as a precedent to filing the claim in the federal courts. When, however, exhaustion of the internal procedures would be futile, or the suit is not harassing or vexatious, exhaustion of internal remedies is not always required. See Purcell v. Keane, 406 F.2d 1195 (3 Cir. 1969); Sabolsky v. Budzanoski, *supra*. We, therefore, deny defendants' motion to dismiss for improper venue and for plaintiffs' failure to exhaust internal remedies.

20. When clear and unambiguous language is involved, the construction of the contract is a question of law for the court to decide. Haskins v. Point Towing Co., 421 F.2d 532 (3 Cir. 1970), cert. den., 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970). When clauses of a contract appear to conflict, they should be read so as not to be in conflict with each other if reasonably possible. Keystone Fabric Laminates, Inc. v. Federal Ins. Co., 407 F.2d 1353 (3 Cir. 1969).

Article XI precludes affiliation of EIA with other labor organizations when the affiliation shall cause EIA to lose its identity. Plaintiffs claim that since their petition is not just an affiliation of EIA with IBEW but a proposal to replace the present Union Constitution with the IBEW Constitution, the General Committee is required to submit the petition to the general membership.

Even accepting defendants' argument, there is nothing that would have precluded plaintiffs from having accomplished what they intended through a two step process rather than through the one step process which they used. If, instead of petitioning to have the general membership discard the present constitution and replace it with the IBEW Constitution plaintiffs had petitioned to amend Article XI by deleting the words "provided, that by such affiliation this Association shall not lose its identity nor forfeit any autonomy over its own affairs" and then had submitted their present amendment, the General Committee would have been required to submit the second petition to the general membership because the defense of Article XI would no longer be available. In form there is a distinction between the two processes; in substance there is none. On balance, we cannot support defendants' interpretation of the Union Constitution when the difference between defendants' and plaintiffs' interpretations is slight and the result of defendants' interpretation is to deprive the union members of the opportunity to determine the direction their union is to take.

Accordingly, we conclude that plaintiffs have stated a cause of action under Sections 301(a) and 501, and there is no genuine issue as to any material fact; EIA's General Committee's actions were not authorized under the Union Constitution and plaintiffs are entitled to judgment as a matter of law.[21]

21. We note that we have not decided that EIA is not the recognized representative of the union members. A determination of the appropriate union representative rests exclusively with the NLRB. We have merely determined that there is an internal union dispute which potentially may affect labor-management relations.