**CENTRAL MASSACHUSETTS AREA LOCAL, AMERICAN POSTAL WORKERS UNION, and Local 544, American Postal Workers Union, Plaintiffs,**

v.

**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Defendant.**

Civ. A. No. 87–2956–S.

United States District Court, D. Massachusetts.

May 31, 1988.

Stephen R. Domesick, Boston, Mass., for Central Massachusetts Area Local, American Postal Workers Union, and Local 544, American Postal Workers Union.

Darryl Anderson, Washington, D.C., Paul F. Kelly, Segal, Roitman & Coleman, Boston, Mass., for American Postal Workers Union, AFL–CIO.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

SKINNER, District Judge.

Plaintiffs Central Massachusetts Area Local, American Postal Workers Union ("CMAL") and Local 544, American Postal Workers Union ("Local 544") have filed this action against defendant American Postal Workers Union, AFL–CIO ("APWU") alleging that defendant violated the union constitution and thereby breached the contract between plaintiffs and defendant when it declined to approve the merger between plaintiffs on the basis of the "Area Local Merger Guidelines Adopted by the APWU National Executive Board, Thursday March 21, 1985." By this action, plaintiffs seek a declaratory judgment that the APWU has violated the union constitution and an order that defendant specifically perform its constitutional obligations by issuing CMAL a charter to recognize the proposed merger between CMAL and Local 544.

Defendant now moves to dismiss the entire action or for summary judgment on all counts, on the alternative grounds that plaintiffs have failed to exhaust intra-union remedies prior to commencing this action, that plaintiffs' challenge to the constitutionality of the guidelines is time-barred by a six-month statute of limitations, or that this court should defer to the National Executive Board's interpretation of the union constitution. For the reasons set forth in this opinion, defendant's motion to dismiss is allowed.

### Background

Plaintiffs allege the following relevant facts. The APWU is a voluntary unincorporated labor organization governed by a constitution and bylaws, which were last amended in 1986. The APWU and the United States Postal Service ("USPS") are parties to a collective bargaining agreement which covers the employees of the USPS in four nationwide bargaining units. The locals affiliated with the APWU administer the collective bargaining agreement on behalf of the APWU on the local level and also negotiate local memoranda of understanding with the USPS.

The union constitution designates CMAL as an "Area Local" and Local 544 as a "Local." An Area Local is comprised of member-employees covered by the collective bargaining agreement in a number of postal installations in a geographical area or within a sectional center (an administrative unit of the USPS, generally corresponding to the first three digits of assigned ZIP codes) or a combination of sectional centers. A Local is comprised of three or more member-employees in the same postal installation. Where a Local has not been chartered, member-employees may become members-at-large.

CMAL was originally known as the Worcester, Massachusetts Area Local, comprising member-employees in the 016 sectional center. As this Area Local merged with Locals in the 014, 015, and 017 sectional centers, its name changed to CMAL. In addition, members-at-large employed at the Bellingham, Massachusetts postal installation, in the 020 sectional center, became members of CMAL in July 1985. On behalf of the Bellingham members-at-large, CMAL has negotiated two local memoranda of understanding and administers the collective bargaining agreement.

The highest ranking governing body of the APWU is the National Convention, which convenes biennially in even numbered years. Between National Conventions, the National Executive Board ("NEB") is the highest ranking governing body of the APWU. On March 21, 1985, the NEB adopted Area Local Merger Guidelines, effective immediately, which provided guidelines for the formation of, or merger with, an Area Local. The guide-

lines also set forth rules for Area Local jurisdiction:

> [N]o Area Local will be allowed to extend its boundaries beyond those of the SCF [sectional center facility] in which it is located without the specific prior consent of the National Executive Board.

> .  .  .  .  .

> If there is now only one chartered Area Local in a SCF, no second Area Local charter will be issued. In SCF's [sic] which now have two or more Area Locals, no new charters will be issued. Locals may by election of their membership choose which Area Local they wish to affiliate with at the time of the merger. No Local will be forced to merge with any Area Local.

Subsequently, on December 29, 1986, Local 544 submitted a request for approval of its merger with CMAL. Local 544, located in Franklin, Massachusetts, is in the 020 sectional center. In accordance with the Merger Guidelines, CMAL notified the APWU that its members had approved the merger with Local 544 by secret ballot.

The APWU researched compliance of this merger request with the guidelines and determined that Local 544 was within the jurisdiction of Boston Metro Area Local. The APWU notified CMAL on March 3, 1987 that the merger request was denied as the proposed merger did not come within the guidelines. The APWU explained that although prior to implementation of the Merger Guidelines, CMAL had merged with Locals in 014, 015, and 017 sectional centers, it could not merge with Locals in other areas unless it received the prior consent of the National Executive Board. The APWU further explained that CMAL's merger with the Bellingham member-at-large office did not justify seeking mergers with Locals in the 020 sectional center, and that the 020 area was already covered by two Area Locals, Boston Metro and South Shore, further precluding CMAL's efforts to merge with Local 544. CMAL and Local 544 both appealed this decision to the NEB.

The NEB heard these appeals on July 13, 1987, and by letter dated August 10, 1987, the NEB informed all parties that it re-affirmed the initial decision to deny the request for this merger. The NEB also informed CMAL and Local 544 that its decision could be appealed to the next National Convention, to convene August 1, 1988. CMAL and Local 544 both served notice to the APWU that they were appealing the NEB's decision to the 1988 National Convention.

### Discussion

The parties agree that this is a so-called "Taft–Hartley Section 301" action, 29 U.S.C. § 185(a), for breach by the APWU of the union constitution. *See Plumbers & Pipe Fitters AFL–CIO v. Local 334, Plumbers & Pipe Fitters*, 452 U.S. 615, 619–20, 101 S.Ct. 2546, 2549, 69 L.Ed.2d 280, 285 (1981) (union constitution is a fundamental agreement of association and can be a "contract between labor organizations" within the meaning of § 301(a)). Defendant suggests that there are three important federal labor policies which independently support dismissal of this action. First is the federal policy of non-interference in the internal affairs of unions. *Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190, 194–95 (1964); *Truck Drivers, Etc. Local 42 v. International Brotherhood of Teamsters*, 482 F.Supp. 266, 272 (D.Mass. 1979) (citations omitted). Defendant suggests that the principle of exhaustion of internal union procedures is a direct result of this policy. The second policy, related to the first, is that courts should defer to interpretation of union constitutions placed upon them by their elected officials. *See, e.g., Monzillo v. Biller*, 735 F.2d 1456, 1458 (D.C.Cir.1984), *see also, Truck Drivers*, 482 F.Supp. at 272 (courts should be reluctant to substitute their judgment for that of union officials in the interpretation of a union's constitution and bylaws and should interfere only where the official's interpretation is not fair and reasonable) (citations omitted). The third policy is that labor disputes should be resolved quickly. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732, 740 (1981), citing *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 707,

86 S.Ct. 1107, 1114, 16 L.Ed.2d 192, 200 (1966) (one of the leading federal policies in labor law is the "relatively rapid disposition of labor disputes").

■ As defendant suggests, the policy against judicial interference with the internal affairs of unions is well established, and this policy obligates unions to attempt internal resolution of their disputes before they seek judicial resolution of section 301 controversies. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842, 854 (1967) (employee must exhaust intra-union remedies before instituting a civil action against his employer in a section 301 action); *Cabargo Cruz v. Fundacion Educativa Ana G. Mendez*, 822 F.2d 188, 192 (1st Cir.1987); *Local Union 1219, United Brotherhood of Carpenters and Joiners v. United Brotherhood of Carpenters and Joiners*, 314 F.Supp. 148, 150–51 (D.Me. 1970) (general rule applied to a Local's action against National Union). As a general matter, exhaustion of internal union appeals procedures will not be required where complete relief sought cannot be gained through the appeals procedure. *Clayton v. International Union, UAW*, 451 U.S. 679, 685, 101 S.Ct. 2088, 2093, 68 L.Ed.2d 538, 546 (1981). Further, the exhaustion requirement is waived where the plaintiff shows that efforts to pursue intra-union remedies would be "futile, or result in irreparable injury because of probable delay," *Local Union 1219*, 314 F.Supp. at 151, or where the union remedy would be unreasonable because of probable delay. *See, e.g., Keck v. Employees Independent Association*, 387 F.Supp. 241, 251 n. 19 (E.D.Pa.1974). *See also, Truck Drivers, Etc. Local 42*, 482 F.Supp. at 272. Plaintiffs contend that the appeal to the National Convention would be futile and that they are being unreasonably delayed by this exhaustion requirement. The record does not support plaintiffs' position.

Plaintiffs make the conclusory statements that

> appealing beyond the NEB to the National Convention is, for the most part, an empty right. Such an appeal is almost always determined by the Convention Committee estabished [sic] to hear appeals and the Committee's members are appointed by the APWU President who has already ruled against the plaintiffs
> . . .

As a factual matter, the APWU president has not ruled against the plaintiffs. Rather, the secretary-treasurer was the union officer who has denied the plaintiffs' request to merge. Further, the affidavit of Richard Langevin, submitted on behalf of plaintiffs in opposition to this motion, is similarly long on opinion and short on facts to support the conclusion that the plaintiffs' further appeal to the National Convention would be futile. Cases wherein the exhaustion requirement has been held to be futile are readily distinguishable. *See, e.g., National Post Office Mail Handlers v. United States Postal Service*, 594 F.2d 988, 991–92 (4th Cir.1979) (where union employed grievance procedure specified in contract and prevailed, and then employed grievance procedures again due to defendant's failure to implement the prior resolutions, union would not be required to exhaust further intra-union remedies where defendant steadfastly continued to refuse to implement the grievance procedure resolutions); *United Steelworkers of America, AFL–CIO v. American Int'l Aluminum Corp.*, 334 F.2d 147, 150 (5th Cir.1964), *cert. denied*, 379 U.S. 991, 85 S.Ct. 702, 13 L.Ed.2d 611 (1965) (in suit between union and employer, where the employer makes it clear that under no circumstances will it recognize the union's right to arbitration, the union need not go through useless formalities merely to exhaust remedies). Merely because the convention committee at the 1986 National Convention rejected the appeal of two Area Locals in Connecticut to merge does not lead to the inescapable conclusion that the convention committee is nothing more than a rubber stamp for the actions of the NEB.

■ With respect to the length of time plaintiffs must wait until the 1988 National Convention, I am similarly not persuaded that the period of delay is unreasonable. Plaintiffs' request to merge was first denied in March 1987. The NEB affirmed the secretary-treasurer's decision in mid-August 1987. From this last action taken by

the APWU, plaintiffs will be delayed approximately one year until the August 1988 convention. The case law does not support plaintiffs' argument that this is an unreasonable period of delay, *see, e.g. Truck Drivers, Etc. Local 42*, 482 F.Supp. 266, 272 (unreasonable to require local union to wait four years to exhaust its intra-union remedies by appealing to the convention); *Perry v. International Longshoreman's Ass'n*, 638 F.Supp. 1441, 1451 (S.D.N.Y. 1986) (delay of over two years unreasonable); *Operative Plasterers', Etc. v. Metropolitan N.Y. Dry Wall*, 543 F.Supp. 301, 310 (E.D.N.Y.1982) (delay of over two years unreasonable). Viewed as a whole, there is nothing extraordinary about the circumstances of this case to hold that a delay of approximately one year from the APWU's last action, or less than one and one-half years from the plaintiffs' initial request to merge, is unreasonable.

Having found that plaintiffs' failure to exhaust their internal appeal procedures prohibits them from pursuing judicial resolution by bringing this action, I need not decide whether plaintiffs' action is untimely or whether I should defer to the NEB's interpretation of the union constitution.

### Conclusion

For the foregoing reasons, defendant APWU's motion to dismiss is ALLOWED.