**Eugene J. KACZYNSKI, Plaintiff,**

v.

**DRAPER PRINTING, Richard A. Draper, and Graphic Arts Local 67, Defendants.**

**Civ. A. No. 93–11572–WGY.**

United States District Court, D. Massachusetts.

March 7, 1994.

---

Paul A. Manoff, Boston, MA, for plaintiff.

Carol Chandler, Andrew L. Matz, Stoneman, Chandler & Miller, Boston, MA, for Draper Printing, Richard A. Draper.

Stephen R. Domesick, Boston, MA, for Graphic Arts Union Local 67.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff, Eugene J. Kaczynski ("Kaczynski"), a former employee of Draper Printing ("Draper"), brought this action against Draper, a corporate officer of Draper named Richard A. Draper, and Graphic Arts Local 67 (the "Union"). In Count I, Kaczynski alleges Draper discriminated against him on

the basis of age, and violated the 1991 Collective Bargaining Agreement (the "1991 Agreement"). In Count II, Kaczynski alleges a claim of unfair representation against the Union under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (the "Act").

The matter is now before the Court on the Union's motion for summary judgment on Count II. In support of its motion, the Union contends that (1) it did not violate its duty of fair representation, (2) Kaczynski's claim is time-barred, and (3) Kaczynski failed to exhaust internal Union remedies.

### UNDISPUTED FACTS

In 1957, Draper hired Kaczynski as an hourly-paid worker in its press department. In 1968, Kaczynski was promoted to "working supervisor." (Kaczynski Aff. ¶ 4). Beginning in 1975, he was paid a salary instead of hourly wages. (Kaczynski Aff. ¶ 4). In October, 1991, Draper informed him that the "supervisor" position was being eliminated, so he returned to the position of full-time press operator, again receiving an hourly wage. (Kaczynski Aff. ¶ 6). In April, 1993, the Union informed Draper that Kaczynski was at that time the member of the bargaining unit with the least seniority and that, under the terms of the 1991 Agreement, he should be the first worker laid off. After his lay-off, Kaczynski asked the Union to file a grievance but the Union declined to do so, as it determined that Kaczynski had no meritorious grievance against Draper. Kaczynski contends that at no time during his 36 years of continuous service with Draper did he ever leave the bargaining unit.[1]

The Union admits that Kaczynski was a member of the bargaining unit until 1981. (Smith Aff. ¶ 8). The Union contends, however, that in 1981 Kaczynski accepted a promotion to a "supervisor" position and thereby, as matter of law, left the bargaining unit.[2] (*Id.*) The collective bargaining agreement between the Union and Draper does not provide for the retention of bargaining unit seniority by a worker promoted to a position

excluded from the unit. (Smith Aff. ¶ 10). Accordingly, the Union contends that Kaczynski's bargaining unit seniority began to accrue only after he returned to the position of full-time press operator in October, 1991. (Smith Aff. ¶ 12).

### DISCUSSION

■ The Union's motion for summary judgment may be allowed only if there is no dispute as to a material fact and the Union is entitled to judgment as matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). To establish a claim of unfair representation, Kaczynski must show that the Union's conduct toward him, as a member of the collective bargaining unit, was arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967).

■ As matter of law, if Kaczynski served as a supervisor, as defined in section 2(11) of the Act, then he did leave the unit. Under the terms of the 1991 Agreement, if he left the bargaining unit, he relinquished his unit seniority, which would have begun to accrue again only when he rejoined the bargaining unit by accepting the full-time press operator position in October, 1991. Therefore, the critical inquiry in this case is whether Kaczynski was a "supervisor" as defined in the Act.

Since the 1947 Taft–Hartley amendments, supervisors, as defined in section 2(11) of the Act, have been excluded from the protections of the Act. Section 2(11) of the Act defines a supervisor as:

> any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical

---

1. If Kaczynski was a "supervisor" as defined in the Act, however, then he did leave the bargaining unit as matter of law.

2. Kaczynski argues that his job status did not change in 1981.

nature, but requires the use of independent judgment.

29 U.S.C. § 152(11). "The burden of proving that any individual is a supervisor within the meaning of the Act falls upon the party making the contention." *Wilson Tree Co. v. International Union of Elec. Salaried, Mach. & Furniture Workers*, Nos. 9–CA–29270 & 9–CA–29511, 1993 WL 402905 at *15 (N.L.R.B. Sept. 30, 1993). Here, it is the Union that bears this burden.

▮ "Supervisors ... by the very nature of their positions ... cannot be represented by a union that represents rank and file employees." *McTighe v. Mechanics Educ. Soc'y*, 772 F.2d 210, 212 (6th Cir.1985). Moreover, the functions enumerated in section 2(11) are to be read disjunctively, and the existence of any one of them, regardless of how frequently or infrequently performed, is sufficient to confer supervisory status. *Maine Yankee Atomic Power Co. v. NLRB*, 624 F.2d 347, 360 (1st Cir.1980) (based on a substantial factual record, the court granted the employer's petition for review of the NLRB's decision that employees were not supervisors); *Butler–Johnson Corp. v. NLRB*, 608 F.2d 1303, 1306 n. 4 (9th Cir. 1979); *see also NLRB v. Yeshiva Univ.*, 444 U.S. 672, 682 n. 13, 100 S.Ct. 856, 862 n. 13, 63 L.Ed.2d 115 (1980) ("[A]n employee may be excluded if he has authority over any one of the 12 enumerated personnel actions, including hiring and firing.").

▮ An individual must actually exercise supervisory authority, however, in order to be vested with statutory supervisory status. The specific job title or the job description is not determinative of the question. *See Maine Yankee Atomic Power Co.*, 624 F.2d at 364 (without the support of other evidence, job description is not determinative of statutory supervisory status); *NLRB v. Dickerson–Chapman, Inc.*, 964 F.2d 493, 497 (5th Cir.1992).

What is determinative is whether, in the exercise of one or more of the indicia of supervisory authority, the individual in question actually exercises independent judgment on behalf of his employer.... It is a question of fact in every case as to whether the individual is merely a superior workman or lead man who exercises the control of a skilled worker over a less capable employee or is a supervisor who shares the power of the management.

*Wilson Tree Co.*, 1993 WL 402905 at *15, *18 (crew chiefs, whom the employer referred to as foremen and the personnel manual vested with supervisory status, were not supervisors under the Act since an employee's specific job title and station in the organization is not automatically controlling; the employee's actual authority and responsibility determine whether he is a supervisor under the Act).

▮ To establish that Kaczynski was a supervisor as matter of law, the Union relies on his admission that he "was promoted to° working supervisor, spending part of ... the time supervising other employees." (Kaczynski Aff. ¶ 4). Also, the Union states that Kaczynski was the foreman and relies on the "Foreman" job description, which includes that the foreman be "in charge of the workroom," be "the only person for employing and discharging employees," give "[a]ll orders for the employees," and "be considered the representative of the Employer." (Smith Supp.Aff. ¶ 2). The Union does not, however, make even one affirmative statement that Kaczynski actually performed, or had the authority to perform, any one of the "Foreman" duties or any of the twelve functions listed in the definition of supervisor in section 2(11) of the Act.[3] Instead, the Union simply recites the "Foreman" job description and states that "Kaczynski was the 'Foreman.'" (Smith Supp.Aff. ¶ 2). Therefore, based on the limited record now before the Court, the Union has failed to meet its burden of showing that Kaczynski was a supervisor within the meaning of the Act rather than a lead man because it has failed to produce evidence that Kaczynski actually had the authority to, or in fact ever, hired, fired, disciplined, excused from work or granted

---

**3.** In oral argument in support of it motion, counsel for the Union argued that Kaczynski assigned work to employees and transferred workers to different positions. Such statements are not found within the record presently before this Court, however, and the Court thus can give no weight to this argument.

time off, assigned or approved overtime, or other similar functions. *See Butler-Johnson Corp.*, 608 F.2d at 1306 n. 4 (individual was a supervisor under the Act because the record revealed that at least one time he exercised independent judgment while performing his duties: he personally reassigned employees to cover for an absent employee).

The Union also contends that the statute of limitation bars Kaczynski's unfair representation claim. Kaczynski's unfair representation claim is subject to a six-month statute of limitation set forth in 29 U.S.C. § 160(b). The limitation clock is activated by knowledge, actual or constructive, of the Union's alleged wrongful conduct. *Graham v. Bay State Gas Co.*, 779 F.2d 93, 94 (1st Cir.1985). Kaczynski avers that he had no knowledge that anyone regarded him as ever having left the bargaining unit until May 3, 1993, when he was informed that he was being laid off. He filed his complaint within six months after May 3, 1993. The Union, however, contends that Kaczynski knew in 1981, when he accepted a promotion to a "supervisor" position, that he was leaving the unit and hence his claim began to accrue on that date. Because there is a dispute as to when and if Kaczynski became a supervisor as defined in the Act, and therefore whether he left the bargaining unit, the Union is not entitled to summary judgment on the grounds that the statute of limitation has run.

Finally, the Union also argues that Kaczynski's failure to invoke the Union's internal appeal process bars his claim. The failure to exhaust internal union remedies is an affirmative defense, *Clayton v. International Union*, 451 U.S. 679, 683, 101 S.Ct. 2088, 2092, 68 L.Ed.2d 538 (1981), and the burden of proof at all times remains on the Union. *Doty v. Sewall*, 908 F.2d 1053, 1061 (1st Cir.1990). "As a general matter, exhaustion of internal union appeals procedures will not be required where complete relief sought cannot be gained through the appeals procedure." *Central Mass. Area Local, American Postal Workers Union v. American Postal Workers Union*, 704 F.Supp. 305, 308 (D.Mass.1988) (Skinner, J.) (citations omitted); *see also Doty*, 908 F.2d at 1061

(exhaustion not required because union procedures could not provide complete relief to union member because procedures did not allow for damages to an aggrieved member); *Doby v. Safeway Stores, Inc.*, 523 F.Supp. 1162, 1167 (E.D.Va.1981) (plaintiffs not required to exhaust internal union appeal procedures where union reversal would not compensate plaintiffs for their loss of income or jobs). Here, Kaczynski has sought monetary damages from the Union. The provisions of the Union's constitution found in the record before the Court do "not authorize the payment of money damages to a union member who successfully asserts an internal charge against [the Union]." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988). Thus, the Union is not entitled to summary judgment because it has not affirmatively proved that the internal procedures could afford Kaczynski complete relief.

## CONCLUSION

For the above-mentioned reasons, the Union's motion for summary judgment on Count II is DENIED without prejudice to its renewal upon a more complete record. It is appropriate to note, however, that Kaczynski squeaks by here only because the Union's motion lacks sufficient specific detail to warrant its allowance. Since the Union need prevail on only one of the points enumerated in section 2(11), *Maine Yankee Atomic Power Co.*, 624 F.2d at 360, it is likely that Kaczynski's position on Count II is hopeless. This is especially so since it is undisputed that during the 1985 collective bargaining negotiations, Kaczynski served on Draper's negotiation team. (Smith Supp.Aff. ¶ 3). This circumstance, standing alone, seems utterly incompatible with his being a rank and file employee. Still, as the Court is here interpreting a statute specific in its enumeration, the principle of *expressio unius est exclusio alterius, see* 2A Norman J. Singer, Sutherland Statutory Construction § 47.23 (1992), would seem to warrant revisiting this issue on another day.

Kaczynski has moved under Fed.R.Civ.P. 12(b)(6) to dismiss the Union's counterclaim that the Complaint be dismissed and that Kaczynski should be sanctioned under Rule

11 for bringing a frivolous claim designed to harass the Union. In view of the Court's action herein on the Union's motion for summary judgment, this counterclaim must be, and hereby is, dismissed on the merits.